[Sac. No. 1847. In Bank.—June 12, 1912.]

## THE PEOPLE OF THE STATE OF CALIFORNIA, Respondent, v. SELBY SMELTING AND LEAD COMPANY (a Corporation), Appellant.

Public Nuisance—Civil Action by District Attorney for Abatement—Venue—Smelter Fumes.—Under the statute of 1899 (Stats. 1899, p. 103), providing that "the district attorney of any county of this state in which a public nuisance may now or hereafter shall exist may . . . bring a civil action in the name of the people of the state to abate said nuisance," the district attorney of a county in which the injurious effects are produced of noxious gases and vapors emanating from smelting works may maintain an action in the superior court of that county for the abatement of the nuisance, notwithstanding the fact that the smelter which emitted such injurious substances had its *situs* in another county.

Id.—Definition of Nuisance—Source of Offensive Matter.—Under section 3479 of the Civil Code defining a nuisance, it is the offensive matter and not its source that constitutes the nuisance.

Id.—Injunctive Relief Proper in Action for Abatement.—In an action brought by the district attorney under that statute for the abatement of such nuisance, the court has the power to enjoin the defendant maintaining the smelter from permitting the injurious fumes emitted by its works to blow over and upon the premises affected thereby. This is so, although the remedy of abatement is the only one specifically provided by the act.

Id.—Injunctive Relief When Permitted.—While it is true that strictly considered, the words "abate" and "enjoin" have technically different meanings in this state, the rule is well established that in proper cases injunctive relief which accomplishes the purposes of abatement without its harsh features, is permissible.

Id.—Injunction Made Immediately Operative—Discretion—Opportunity to Discover Harmless Method of Operating Smelter.—It was not an abuse of discretion for the trial court by its judgment to make the injunction immediately operative, without affording the defendant an opportunity for experiments to discover a harmless way to conduct its smelting operations, where there was an interval of more than three years between the time of the commencement of the action and the entry of the decree.

Id.—Review of Injunctive Decree.—Upon a review of the language of the decree, it is held not to enjoin more than the maintenance of such a nuisance as had been established on the trial and in the way charged in the complaint.

ID.—FINDINGS—EVIDENCE.—Upon a review of the evidence, it is held to support the finding that during the three years before the trial and prior thereto the defendant had gradually increased the size of its works and that the amount of sulphurous and other noxious fumes and gases had been increased during such time.

ID.—NEW TRIAL — NEWLY DISCOVERED EVIDENCE — CUMULATIVE EVIDENCE—DISCRETION.—It was not an abuse of discretion for the trial court to refuse the defendant a new trial of such action on the ground of newly discovered evidence to the effect that by a series of experiments it was provable that complaints of the nuisance produced by the fumes of the smelter were made by residents of the district alleged to be affected thereby, on days when it was not in operation, and that the disagreeable odors complained of were traceable to other sources, if such facts were all such as might have been produced by due diligence before the trial, and were merely cumulative of similar evidence offered at the trial.

ID.—CUMULATIVE NEWLY DISCOVERED EVIDENCE AS GROUND FOR NEW TRIAL.—Undoubtedly, affidavits presenting evidence of a cumulative character may, and often do, cause a trial judge to grant a motion for a new trial, but whether such motion receives favorable or adverse ruling, the whole matter is addressed to the judge, whose discretion will not be interfered with on appeal except in cases of manifest abuse.

ID.—BALANCING INJURIES RESULTING FROM GRANTING OR REFUSING TO GRANT INJUNCTION.—In determining whether an injunction should be granted abating a public nuisance caused by the fumes from a smelter, the court will not balance the resultant injuries, or hold the injunctive relief improperly granted, for the reason that the hardship inflicted upon the defendant by the granting of the injunction would be much greater than that caused to the inhabitants of the district affected by the fumes if the nuisance were permitted to continue.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. L. G. Harrier, Judge presiding at trial; A. J. Buckles, Judge refusing new trial.

The facts are stated in the opinion of the court.

Chickering & Gregory, F. W. Hall, Curtis H. Lindley, and Henry M. Hoyt 2d., for Appellant.

J. M. Raines, T. T. C. Gregory, and Houghton & Houghton, for Respondent.

MELVIN, J.—This is an action prosecuted in the name of the state by the district attorney of Solano County for the abatement of a nuisance. Judgment was in favor of the state. By it the defendant corporation was enjoined and restrained from permitting fumes from its smelting works to blow over and upon parts of Solano County. From this judgment and from an order denying its motion for a new trial defendant appeals.

The first question presented here relates to the jurisdiction of the superior court of Solano County over the cause of action. The prosecution was instituted under the authority of the statute passed in 1899 (Stats. 1899, p. 103), which provides that "The district attorney of any county of this state in which a public nuisance may now or hereafter shall exist may . . . bring a civil action in the name of the people of the state to abate said nuisance." Appellant contends that since the source of the odors and gases found to be injurious to the inhabitants and crops in a part of Solano County, was the smelter located in Contra Costa County, and since the enjoining order must of necessity operate upon this place of production of the noxious vapors, therefore the statute gave the power of suing to abate the nuisance to the district attorney of Contra Costa County and not to the district attorney of Solano County. Appellant's attorneys argue that the nuisance, if any, was the misuse or abuse of the processes used in carrying on the business of smelting ores; that as such it existed in the county of Contra Costa alone; and that, even if injurious to persons and property in another county, the nuisance as such did not exist in any county except where the tortious acts were performed. They insist that the district attorney is a county officer who may only act within the limits of his own county. The cause of action, they say, being not for damages but to *abate* a nuisance, it is strictly local and the nuisance only "exists" for the purposes of its abatement in the county in which the objectionable fumes and gases are liberated into the air during the processes of smelting ores. They are of the opinion that, under the language of the statute, both the *existence* and the *abatement* in such cases must be local to the same county. Authorities are cited in support of the position taken by appellant that the jurisdiction of an action to abate a nuisance is in the

place where a nuisance has its genesis. Undoubtedly that is the law in some places. *In re Eldred & Ford,* 46 Wis 545, [1 N. W. 175], was a matter arising out of an application made by persons who had been indicted for maintaining a dam not authorized by law, in such way that it obstructed a public highway by causing water to stand thereon. The court, after an elaborate analysis of the cases, held that the offense was indictable only in the county in which the dam was maintained and not in that in which the particular injury was averred. This case, however, seems to be no longer authority in Wisconsin. In the later case of *Lohmiller* v. *Indian Ford Co.,* 51 Wis. 683, [8 N. W. 601], which was an action for the abatement of a dam alleged to be a nuisance, the court said: "In support of the first of these causes of demurrer, the learned counsel for the defendant insists that there is an improper joinder of causes of action for the reason that the lands injured are in Jefferson County while the dam which occasions the injury is in Rock County; consequently the causes of action so united required different places of trial. The gravamen of the complaint, surely, is for an injury to the plaintiff's land in Jefferson County occasioned by a dam in Rock County. . . . We are inclined to think the action was properly brought in the county in which the subject of the action was situated. . . . (Under sec. 1, chap. 123, Tay. Stats.) It is true, the cause of the injury is in another county." In *Horne et al. Water Comm'rs.* v. *City of Buffalo,* 49 Hun, 76, [1 N. Y. Supp. 801], the action was one brought to restrain the authorities of the city of Buffalo from depositing filth in Niagara River so that it should be carried by the current to a place in another county where it would pollute the water supply of the city of Suspension Bridge. In that case the court held that the cause of action was in Erie County in which Buffalo is situated and not in Niagara County where the water was taken from the river for use for the inhabitants of Suspension Bridge. The conclusion reached in that case seems to be dependent, in part at least, upon the particular statute involved, for the court said: "The intention of the legislature to (make) an action for the abatement of a nuisance local is clearly manifested by classifying it with actions which are in their nature local, such as ejectment and waste. I am

clearly of the opinion that the nuisance described in the complaint is situated in the county of Erie, at the place where the defendants are in the habit of dumping foul substances in Niagara River.'' Appellant also cites *Stillman* v. *White Rock Mfg. Co.,* 3 Woodb. & M. 539, [23 Fed. Cas. p. 83], in which it was held that where injury to property in Connecticut was caused by an unwarranted canal maintained in Rhode Island the jurisdiction pertained to the circuit in which Rhode Island was situated; but the exclusive remedy sought was injunction and the court held that the canal being in Rhode Island its use could be enjoined only in the circuit in which that state was included. In the case at bar there is no such clash of jurisdictions. If the district attorney of Solano County is authorized to institute the action in that county, the superior court which has powers that are statewide, may stretch forth the hand of equity into any county, and restrain the operation of a nuisance-creating agency. In *Rickey Land & Cattle Co.* v. *Miller & Lux,* 152 Fed. 16, [81 C. C. A. 207], *Stillman* v. *White Rock Mfg. Co.,* 3 Woodb. & M. 539, [23 Fed. Cas. p. 83], is cited with apparent approval. Other interesting cases are called to our attention by appellant, but we need not review them here, as we are of the opinion that the weight of authority, especially in California, is against appellant's view of the law. Our statute defining nuisance does not refer to that which produces the injurious substance as the nuisance. The offensive gases and not the factory emitting them would come within the definition given by section 3479 of the Civil Code. That section is, in its essential part, as follows: ''Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance.'' Under this section it seems clear that the offensive matter and not its source is regarded. Section 392 of the Code of Civil Procedure, provides that an action for injury to real property must be tried in the county in which the property is situated. In the case of *City of Marysville* v. *North Bloomfield Gravel Min. Co.,* 66 Cal. 343 [5 Pac. 507], in the opinion of the court the following language is found: ''This action was brought to abate a nuisance, which it was alleged was causing injury to real property in the county of

Yuba, where the action was commenced and is still pending. An action for injuries to real property must be tried in the county in which the subject of the action or some part thereof is situated, subject to the power of the court to change the place of trial as provided in the code.   (C. C. P., sec. 392.) Being an action 'for injuries to real property,' it is not within the class of cases which 'must be tried in the county in which the defendants, or some of them, reside at the commencement of the action.' ''

It has been held that an action for an injunction to prevent a defendant from diverting water from a ditch located partly in one county and partly in another may be maintained in the county in which the consequential damage is sustained, although the actual cause of diversion is not in that county. It has also been held that an action to prevent the erection of a dam in one county which, when completed, would cause damage to real property in another county, should be tried in the latter county.   (*Drinkhouse* v. *Spring Valley Water Works,* 80 Cal. 309, [22 Pac. 252] ; *Last Chance Water Ditch Co.* v. *Emigrant Ditch Co.,* 129 Cal. 277, [61 Pac. 960].)

In *American Strawboard Co.* v. *State,* 70 Ohio St. 140, [71 N. E. 284], the supreme court of Ohio was considering an indictment found in Sandusky County for nuisance consisting in the pollution of a stream flowing through that county. The actual corruption of the stream occurred in Seneca County.   A statute of Ohio gave jurisdiction of the offense in any county where its inhabitants were aggrieved thereby, but it was urged that this law was in violation of the constitutional provision that an accused shall be tried ''by a jury of the county or district in which the offense is alleged to have been committed.''   This objection was held unsound, the court saying, among other things: ''The gravamen of the complaint made in this indictment is not that the American Strawboard Company polluted a watercourse known as the Sandusky River, but the gist of the complaint is that it so corrupted and polluted the same to the 'damage, prejudice and common nuisance of the citizens of Sandusky County.'   While the offense so charged may grow out of, and may result from, an unlawful act of said Strawboard Company done or committed in Seneca County, yet the specific crime charged is consummated, completed and takes

effect only in Sandusky County; until such consummation, the crime charged was incomplete; and until such time as the rights of the citizens of Sandusky County were actually invaded, the particular crime charged in this indictment was not committed.'' (See, also, *State* v. *Lord,* 16 N. H. 357; *Stamm* v. *City of Albuquerque,* 10 N. Mex. 491, [62 Pac. 973].) The case at bar was properly commenced in Solano County and there was therefore no error committed by the superior court in overruling the demurrer to the complaint.

By the judgment of the superior court the defendant was enjoined and restrained from permitting the injurious fumes emitted from its works to blow over and upon the premises described in the complaint. Appellant insists that, whatever may be the powers of the court when the attorney-general sues for the elimination of a nuisance, under the statute giving limited power to a district attorney to institute such an action as this, the court could grant no other relief than that of abatement which alone is mentioned in the act—that the failure to specify the remedy by injunction indicates, under the doctrine *expressio unius est exclusio alterius,* that the legislature never intended to confer upon the district attorney the right to set the machinery of the law in motion for the removal of any nuisances except those necessarily susceptible of abatement. Appellant's attorneys therefore contend that the judgment rendered was beyond the power of the court and void and that however desirable it might be in an action of this sort to give the court the power to enjoin the operation of the works producing the nuisance, such power has been withheld and cannot be lawfully exercised. While it is undoubtedly true that, strictly considered, the words ''abate'' and ''enjoin'' have technically different meanings (*Ruff* v. *Phillips,* 50 Ga. 133) in California, the rule is well established that in proper cases injunctive relief which accomplishes the purposes of abatement without its harsh features, is permissible. In *Sullivan* v. *Royer,* 72 Cal. 248, [1 Am. St. Rep. 51, 13 Pac. 655], abatement was the remedy prayed for in plaintiff's bill and the jury found as part of their verdict, that the nuisance should be abated. The judgment enjoined defendant from continuing the nuisances complained of. The court said: ''An abatement of a nuisance is accomplished in a court of

equity by means of an injunction proper and suitable to the facts in each case (Wood on Nuisances, secs. 777–794).'' (See, also, *McCarthy* v. *Gaston Ridge Mill. & Min. Co.*, 144 Cal. 546, [78 Pac. 7]; *City of Fresno* v. *Fresno Co. I. Co. et al.*, 98 Cal. 184, [32 Pac. 943]; *Byers* v. *Colonial Irr. Co.*, 134 Cal. 555, [66 Pac. 732].) The judgment rendered was within the power conferred by the statute in reliance upon which the district attorney instituted the action.

Appellant asserts that the injunction is too sweeping in its terms and assigns that alleged fact as error. The first objection made in that behalf is that the injunction operates immediately, thus giving no opportunity to appellant for experiments to determine whether or not smelting of ores with sulphur bases may be conducted without producing the injuries to property in Solano County for the prevention of which the action was commenced. Our attention is called by counsel for respondent to the fact that the complaint was filed March 14, 1905; the cause was tried in August, 1906; the findings were filed in April, 1907; and the judgment was entered in July, 1908. Evidently the appellant was given ample time and opportunity for experimentation and there was no abuse of discretion by the chancellor in making the final decree.

The next criticism is that the decree enjoined more than that which constituted a nuisance. An examination of its language, however, fails to convince us that the criticism is well founded. The decree commands that the operation of defendant's works: *"as conducted by defendant* in liberating at and therefrom into the air sulphurous and other injurious and noxious gases and smoke, and also smoke and fumes and gases, so in the findings of fact herein found to be so offensive to the senses so as to interfere with the comfortable enjoyment of life and property in the manner and to the community and neighborhood as in the said findings of fact set forth and described, generated or produced by such operations without condensing or otherwise disposing of the same or eliminating the same before reaching open air, is as to said city of Benicia and said portion of said Solano County mentioned and referred to in said findings, a public nuisance for the period commencing at or about the middle of the month of March of each year, for

eight months in each and every year including the latter
half of said month of March.'' The abatement of the nui-
sance is then decreed and defendant and its officers, agents,
and servants are enjoined from operating upon ores during
the period in each year of the prevalence of the wind blow-
ing from the defendant's factory towards Benicia without
condensing or otherwise disposing of smoke, fumes, and cer-
tain enumerated kinds of noxious and injurious gases ''so
found to be so offensive to the senses, . . . in such a manner
so that the same will not reach the open air and will not
be blown or carried by said winds over or into or upon the
city of Benicia.'' Read as a whole the judgment does not
restrain the operation of the works except in such manner
as to produce smoke, fumes, and gases offensive to the
senses and destructive of the property of the people resid-
ing in and around Benicia. In other words, appellant is
enjoined from maintaining the same sort of nuisance that
had proved injurious in the way charged in the complaint
and proved on the trial. (Judson v. Los Angeles Sub. Gas.
Co., 157 Cal. 173, [21 Ann. Cas. 1247, 26 L. R. A. (N. S.)
183, 106 Pac. 581].)

In their discussion of the appeal from the order denying
the motion for a new trial, appellant's attorneys have aban-
doned all exceptions taken to the admission of evidence dur-
ing the trial save the first one which raises the same ques-
tion as that presented by the demurrer to the complaint. As
we have previously disposed of that question herein we need
discuss it no further.

One of the findings is attacked on the ground that it is
not supported by the evidence. It was to the effect that
during the three years before the trial and prior thereto
defendant had gradually increased the size of its works and
that the amount of sulphurous and other noxious fumes
and gases had been ''increased during such time.'' Appel-
lant calls our attention to the fact that Mr. Von der Ropp,
a witness, said at the trial, that the smelting plant was giving
off five and a half tons of sulphur a day as against twelve
tons formerly poured into the atmosphere. But the same
witness testified that there was a gradual increase in the
quantity of fumes emitted from the furnaces up to 1895;
that since that time it had been ''fairly steady''; and that

the increase in production due to the remodeling of the entire plant had been going on "right along." It is true that a decrease in the amount of sulphur-bearing ores roasted at the works of appellant was shown. This was due to the sending of certain ores to other mills, but the decrease occurred after the complaint was filed and could have no effect upon the findings which are made as of the time of the commencement of the action. It is true that the proof showed a practical elimination of all danger from the escape of lead fumes into the air due to the construction of a bag house. But the evidence showed that the damage was caused principally by sulphurous gases. It makes no difference that other actions against this defendant by private persons were based upon the theory that the lead fumes caused damage to people and stock. Neither the allegations nor proof of plaintiff here nor the court's findings were limited to that theory or its establishment. The finding, which is attacked, was supported by the evidence. No other findings are specifically critcised by appellant's counsel in their brief. Therefore we proceed to the consideration of that part of the motion for new trial based upon the assertion of newly discovered evidence.

We pass respondent's contention that the affidavits of newly discovered evidence are not properly authenticated in the record. Our examination of them has been such that we are prepared to pass upon the merits of the claim that the court abused its discretion in refusing to grant a new trial. By a series of experiments appellant sought to show, and offered affidavits tending to prove, that complaints were made by residents of Benicia and vicinity of the nuisance produced by fumes from the smelter on days when it was not in operation; and that the disagreeable odors were traceable to sources other than the Selby smelter, notably to the petroleum refineries of the Union Oil Works. But these facts were all such as might have been produced by due diligence before the trial. Indeed at the trial there was testimony upon the part of Professor O'Neill, Mr. F. E. Wyman, Mr. W. D. Hyde, Professor Osterhaut, Mr. Albert S. Colton, and Mr. Von der Ropp, to the effect that disagreeable fumes were emitted by the refineries of the Union Oil Works and other manufacturies on the shores of the bay. Evidence

of later experiments, would be at best but cumulative. Evidence of complaints on days when the smelter was inactive tended merely to show that other causes of discomfort existed—another phase of the evidence adduced at the trial regarding the oil refineries. Proof that such complaints had been erroneously made against appellant would be likewise cumulative. After a careful examination of these affidavits we cannot say that they exhibit so strong a defense that the court below abused its discretion in failing to grant a new trial. Undoubtedly, affidavits presenting evidence of a cumulative character may, and often do cause a trial judge to grant a motion for a new trial, but whether such motion receives favorable or adverse ruling, the whole matter is addressed to the judge, whose discretion will not by this court be interfered with except in cases of manifest abuse. (*Oberlander* v. *Fixen Co.*, 129 Cal. 692, [62 Pac. 254].)

Appellant seeks the benefit of the doctrine of comparative injuries, sometimes known as "the balance of hardship," asserting that since the discomfort and injury caused to the inhabitants of Solano County by the fumes from the smelter are much less than the hardship suffered by the corporation in the partial suppression of its business, injunctive process should be denied. A similar question was discussed in one of the opinions in *Hulbert* v. *California Portland Cement Co.*, 161 Cal. 239, [118 Pac. 931], but that opinion was not signed by a majority of the court as the matter was not regarded by some of the justices as being essential to the determination of the proceeding then before the court. As this is an "appeal on the merits" and as the question is now squarely presented, we adopt the views expressed in the above mentioned opinion.

It follows from the foregoing discussion that the judgment and order from which the defendant has appealed must be affirmed.

Lorigan, J., Angellotti, J., Shaw, J., Sloss, J., and Henshaw, J. concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing and filed the following opinion thereon on the fifteenth day of July, 1912:

BEATTY, C. J.—I dissent from the order denying a re-hearing of this cause, and from the judgment of the court, upon the ground that the district attorney of Solano County had no authority to institute the action in the name of the people of the state. The statute, in my opinion, authorizes but one action in the name of the people, and that is an action to be instituted by the district attorney of the one county where the nuisance exists—where in other words it has its *situs*—or perhaps by the attorney-general in a case where the district attorney neglects his duty. Within the meaning of this statute the smelting works in Contra Costa County was the nuisance, if there was any nuisance, and not the fumes and gases in Solano County. The works have a *situs*, the gases have none. To hold that every place to which they may be carried by the wind is the place where the nuisance exists is to hold that the statute authorizes not merely one action in the name of the people of the state but an indefinite number of actions. If this view was essential to the protection of the residents of Benicia or any part of Solano County there would be much to commend it, but it is not essential. They can commence and maintain actions in their own name for the abatement of the nuisance if it is a nuisance. It is in such an action that, in my opinion, the issue should be tried. This difference as to parties would in many cases be determinative of the place of trial, and in causes involving local interests and affected by local feeling, the place of trial is not a trifling consideration.