[S. F. No. 6060. In Bank.—January 16, 1914.]

SUMNER CAHILL, by P. Cahill, his Guardian ad litem, Appellant, v. E. B. & A. L. STONE COMPANY (a Corporation) et al., Defendants; E. B. & A. L. STONE COMPANY (a Corporation), Defendant and Respondent.

NEW TRIAL—APPEAL FROM ORDER GRANTING—SCOPE OF REVIEW.—On an appeal from an order granting a motion for a new trial especially on the ground of newly discovered evidence, the appellate court is not confined to a review of the action of the trial court in granting the new trial on that ground, but will affirm the order if upon an examination of the entire record it appears that a new trial should have been granted for any ground upon which the motion was based.

ID.—NEWLY DISCOVERED EVIDENCE—SHOWING NECESSARY TO WARRANT NEW TRIAL ON THAT GROUND.—In order to warrant the granting of a new trial on the ground of newly discovered evidence, it must satisfactorily appear, among other things, that reasonable diligence was used to discover and produce the evidence on the former trial, that the newly discovered evidence is not merely cumulative, and that it may be reasonably inferred that the result of the trial would have been different if the newly discovered evidence had been there presented.

ID.—DISCRETION OF TRIAL COURT IN GRANTING NEW TRIAL—REVIEW ON APPEAL.—While it is essential that such requirements shall be met by the party seeking a new trial on the ground of newly discovered evidence, still whether he has sufficiently done so is a matter committed for determination to the sound discretion of the trial court; and it is only where such a showing is entirely lacking that it can be said by an appellate court, as a matter of law, that such discretion was abused in granting the motion.

ID.—DILIGENCE IN DISCOVERING EVIDENCE—DELAY OF SEVEN YEARS.—Where in a personal injury case a demurrer to the complaint was sustained, but on appeal the judgment was reversed and the case is then set for trial seven years after the accident which caused the injuries, and, the defendant in the mean time, on the assurance of its attorneys that the judgment would be affirmed by the appellate court, made no attempt to preserve evidence but destroyed its records showing the names of its employees at the time and place of the accident, so that upon the trial it was able to ascertain only two of such employees, but later it learns of other employees who can give material testimony, the trial court is justified in granting a new trial.

ID.—EVIDENCE MERELY CUMULATIVE—WHETHER JUSTIFIES NEW TRIAL—
DISCRETION OF COURT.—The fact that newly discovered evidence is
merely cumulative does not preclude the granting of a new trial
thereon. The question before the trial court, even where the newly
discovered evidence is simply cumulative, is whether, if such evi-
dence had been presented on the trial of the cause, it would probably
have produced a different result. The determination of that ques-
tion is addressed wholly to the discretion of the trial court, and as
a general proposition, whether its ruling is favorable or unfavorable,
that discretion will not be reviewed except for manifest abuse.

NEGLIGENCE—LEAVING PUSH CAR IN STREET—ATTRACTION TO CHILDREN.—
For a construction company to leave a push car loaded with steel
rails unguarded on a skeleton track in a public street in a populous
part of a city where children are likely to be attracted by it, is
negligence.

ID.—INJURY TO CHILDREN—PROXIMATE CAUSE—PREVIOUS STARTING OF
CAR BY OTHER CHILDREN.—If a boy, while playing with and operat-
ing the car, is injured by one of the wheels running over his foot, the
negligence of the construction company, in respect to him, is not
excused by the fact that the car had previously been put in motion
by other children. The original neglect of the company in failing
to guard the car continued as the direct and culpable cause of the
injury, and its responsibility is to be determined by the probable
injurious consequences to children which were to be anticipated
therefrom, and not by subsequent and independent events or agencies
that may have arisen. In such a case children are not considered
such responsible agents as break the chain of causation.

ID.—CONTRIBUTORY NEGLIGENCE OF BOY—QUESTION OF FACT.—It cannot
be said, as a matter of law, that the injured boy, who was twelve
years of age, was negligent in playing with and running the car.

ID.—NEGLIGENCE OF CHILDREN—DEGREE OF CARE EXACTED.—Minors, as
well as adults, are required to exercise ordinary care, but the ordin-
ary care which a child is required to exercise must be determined by a
different rule than is applied in the case of adults. The care which
a child is required to exercise is only that degree which children
of his maturity and capacity under similar circumstances ordinarily
exercise, and this, except in a case where there can be no doubt
under the evidence that the child not only knew but at the time
realized and appreciated the danger of his conduct, is to be deter-
mined from the circumstances of the particular case in which his
conduct is involved and under the evidence there presented to the
jury.

ID.—CARE REQUIRED OF CHILDREN—QUESTION OF LAW OR OF FACT.—
There is no precise age at which, as a matter of law, a child is
to be held accountable for all his actions to the same extent as
one of full age. The question as to the capacity of a particular

child at a particular time to exercise care in avoiding a particular danger, is one of fact, falling within the province of a jury to determine.

APPEAL from an order of the Superior Court of Alameda County granting a new trial.   F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Stanley Moore, Powell & Dow, and Wilder Wight, for Appellant.

Heller, Powers & Ehrman, for Respondent.

LORIGAN, J.—This action was brought to recover damages for personal injuries.   A nonsuit was granted as to the defendant, Atchison, Topeka & Santa Fe Railway Company. Plaintiff had a verdict and judgment against the E. B. & A. L. Stone Company.   That company moved for a new trial which was granted and plaintiff appeals from that order.

The following facts are stated in the complaint, and at the trial there was evidence on the part of plaintiff tending to sustain them.   The defendant, E. B. & A. L. Stone Company (hereafter to be referred to as the company), prior to and on August 11, 1903, was engaged in constructing a roadbed and railroad for the Atchison, Topeka & Santa Fe Railway Company along Lowell Street between 55th and 56th streets in the city of Oakland.   A temporary track had been laid along Lowell Street on which the employees of the company operated a push car to carry steel rails used in the construction work and it was pushed along the track as the rails were needed in the extension of the work.   On August 11, 1903, this car was left by the employees of the company at the close of their day's work standing on Lowell Street between the above streets, loaded with steel rails and without in any manner being fastened, guarded, or protected from being put in motion; that this point was the center of a populous district in the city of Oakland where large numbers of children were accustomed to congregate for play and did so while the construction work of the company was being done, playing around and upon said push car and track.   On the evening of the day last referred to, plaintiff, a boy of the age of twelve years, who it is alleged

was too young and inexperienced to foresee the danger therefrom, was with a number of other children, also alleged to have been young and inexperienced, engaged in playing with the said car, pushing it up, and riding down grade upon it in such play; that in so playing with the others upon it and while attempting to block it as it was running down grade, the foot of the plaintiff was caught beneath the wheels of the car and so injured as to necessitate amputation.

The action is based upon the alleged negligent conduct on the part of the company in leaving the car unsecured and unprotected in the vicinity of a populous center of the city and under circumstances which would make it attractive to children.

Aside from other matters of defense, the answer of the company set up as to the car that its employees on the day in question when they ceased work and left it standing on the track, left it heavily loaded with rails and with its wheels securely and safely blocked with heavy wooden ties placed in front of the wheels of said car and driven between the said rails and said wheels.

The trial resulted in a verdict in favor of the plaintiff. A motion for a new trial was made by the defendant company upon the grounds, among others, that the court erred in denying its motion for a nonsuit and in refusing to instruct the jury to return a verdict in its favor, and upon the further ground of newly discovered evidence.

The motion was granted, the court stating in its order therefor that "the same is hereby granted on the ground of newly discovered evidence." Plaintiff appeals from this order.

It is conceded, notwithstanding the motion was granted especially on the ground of newly discovered evidence, that this does not confine this court to a review only of the action of the court in granting it on this ground, but that such order will be affirmed here if upon an examination of the entire record it appears that a new trial should have been granted for any ground upon which the motion was based. (*Kauffman* v. *Maier*, 94 Cal. 269, [18 L. R. A. 124, 29 Pac. 481]; *Ben Lomond Wine Co.* v. *Sladky*, 141 Cal. 619, [75 Pac. 332]; *Morgan* v. *Robinson Company*, 157 Cal. 348, [107 Pac. 695].)

Under this rule the respondent claims that not only was the

order justified on the ground specially stated by the trial court, but also on the other grounds referred to above on which the motion was based.

We will consider these points as we proceed, determining first whether the action of the trial court in granting the motion on the specified ground of newly discovered evidence was correct.

The accident to plaintiff took place about 7:30 in the evening, the children coming to play with the car soon after the construction gang had gone away. This trial took place some seven years after the accident. There was but one witness on the part of the plaintiff who testified that the car had been left entirely unguarded when the employees of the defendant quit work. The defendant in support of its defense that sufficient precautions to safeguard the car had been taken by its employees produced two witnesses—John Higgins and C. E. McDonald. Higgins, who was the superintendent for the company in the construction work and who worked for it about a month afterward, testified that when the crew quit work at six o'clock in the evening he left the car on the end of the track heavily loaded with steel rails and to protect it against being moved, blocked the front wheels of the car with a tie 6x8 and about eight feet long, placed across the track right up against the wheels. McDonald was assistant engineer of the Atchison, Topeka & Santa Fe for which the defendant company was constructing the track and was superintending the construction work. He noticed the car after the men quit and testified that it was loaded with rails and blocked in the manner described by Higgins. Higgins also testified that he did not remember the names of the men who were employed under him during this construction work on the day of the accident.

Affidavits of the attorneys for defendant and certain of its officers having charge of the case were presented on the matter of newly discovered evidence. Here it may be said preliminarily, that this action was brought in 1904, a demurrer to the complaint sustained, an appeal taken to this court and the judgment reversed (*Cahill* v. *Stone Co.*, 153 Cal. 571, [19 L. R. A. (N. S.) 1094, 96 Pac. 84]). The affidavits (which were not contradicted) showed that after the appeal was taken the officers of the defendant were informed

by their attorneys that there was no probability that the
judgment would be reversed here and they had, there-
fore, dismissed from their minds any necessity of preparing
for the trial of the cause; that when the case was set
for trial about seven years had elapsed since the accident;
that in so preparing they used every effort to obtain the
names of the persons who were in the construction crew with
Higgins when they left work on the evening of the accident;
that Higgins was the only one they knew who could tell·this
and he was a very old man and his memory had so far failed
that he could not remember who they were; that the officers
of defendant tried to ascertain their names from McDonald
who, at the time of the accident, represented the Santa Fe
and who with Higgins was the only person they knew of who
saw the condition of the car when the crew quit work, but
he did not know the names of any of them; that for several
weeks they made efforts in this same direction and became
convinced that Higgins and McDonald were the only persons
who knew the condition that the car was left in by the em-
ployees of the defendant on the evening of the accident; that
the payrolls of the company would have shown but they with
other old and accumulated records had been destroyed in
moving the offices of the company in 1907 and at a time when
the case, by reason of the assurance of the attorneys of the
defendant above referred to, had slipped the attention of
the officers of the defendant. That on the last day of the
trial McDonald stated to the manager of the defendant that
a man named Conery had succeeded Higgins in the track-
laying for the defendant and was then working for the West-
ern Pacific and might know the names of some of the crew
who had worked for Higgins; that this was the first informa-
tion the representatives of the defendant had of the prob-
ability of any person being able to give this information; that
the said manager immediately wrote to Conery asking him if
he could inform him of the names of the crew. The affidavit
of the manager then set forth that after the trial had ended
he received word from Conery as to what he knew about the
safeguarding of the car as set forth in the affidavits of Conery
and those of Dooley and Barry filed on the motion; that de-
fendant had no knowledge of these facts until after the trial
of the case had ended.

The affidavit of Conery stated that on the day of the accident he was working for the Atchison, Topeka & Santa Fe as inspector of construction work; that shortly after six o'clock on the evening of the accident he saw the car in question with rails on it left on the track with a railroad tie chocked up against the front wheels; that Higgins had then left the place but some of his construction crew were still there; that he called several of them, among others, T. J. Dooley and M. H. Barry, to assist him in taking two steel rails which were on the car—weighing in the neighborhood of nine hundred and thirty pounds apiece—and placing them in such a way as to make an additional chock to prevent the car from being moved; each of said rails was so placed with reference to the ties already laid that it would have been impossible to move the car without removing the rails, the one end of the rail being in the air, the other being crowded up alongside of a tie in the skeleton track and the rail itself resting on the end of the car; that in his large experience in protecting cars from being handled, the car in question was thus guarded in as safe a way and manner as it could be; that the next morning he was informed of the accident, examined the track in the vicinity of where the car was left and found that one of the rails so used to chock the car had been placed upon it and the other one was lying in the center of the temporary track between the rails; that he did not know that Higgins knew of the steps he took to further protect the car but believed he did not as Higgins had left the job prior to the time affiant came along; that he knew nothing of the existence of this case until he received a letter from the manager of the defendant on April 18, 1910; that he had not worked for the Santa Fe for more than five years and was during the time of the trial of the action working for the Western Pacific at Marysville.

The affidavits of Dooley and Barry, the persons referred to in the affidavit of Conery, stated the same matters and facts respecting the safeguarding of the car as were stated by Conery, except that they left the employ of the defendant shortly after the accident and went to work for different railroads and never heard of this case until after the trial when Conery spoke to them about the manner in which the car had been safeguarded on the night of the accident.

As requirements warranting a trial court in granting a new trial on the ground of newly discovered evidence, it must satisfactorily appear, among other things, that reasonable diligence was used to discover and produce the evidence on the former trial; that the newly discovered evidence is not merely cumulative; that it may be reasonably inferred that the result of the trial would have been different if the newly discovered evidence had been presented on the trial.

Appellant insists that in no particular were these requirements satisfactorily shown by the moving papers and hence the trial court abused its discretion in granting the motion on that ground.

It is, of course, well settled that the granting or denying of a motion for a new trial on the ground of newly discovered evidence is one left largely to the discretion of the trial court and its action thereon is interfered with by this court not only with great reluctance but then only when it appears that there has been a clear abuse of discretion. While it is essential that the requirements referred to shall be met by the party seeking a new trial on the ground of newly discovered evidence, still whether he has sufficiently done so is a matter committed for determination to the sound discretion of the trial court and it is only where such a showing is entirely lacking that it can be said as a matter of law that such discretion was abused in granting the motion. A fair consideration of the showing made by respondent satisfies us that we cannot say that there was such an abuse.

As to the showing of reasonable diligence. The claim of appellant is that there was a failure on the part of the respondent during a period of some seven years intermediate the bringing of the action and the close of the trial to discover this new evidence and absence of a showing of a continued persistent inquiry which might have enabled defendant to have discovered it. It is not suggested how any more particular inquiry or search would have disclosed this new evidence or in what particular the defendant or those representing it in the conduct of the case were lacking in diligence toward ascertaining it. It relied on the assurance of its attorneys that the judgment in its favor on the pleadings effectually disposed of the case and that the appeal to this court would be sustained. That assurance, it is true, was unfounded, but

that the representatives of the defendant honestly entertained it is not questioned. After a reversal by this court and when preparation for the trial became necessary some seven years had elapsed since the accident. The payrolls of the defendant which would have shown the names of the persons employed with Higgins when the accident occurred had in the interim been destroyed. This occurred in the routine of business when these and other records were considered obsolete and worthless and when defendant believed that the case had been ended as assured by its attorneys, and the necessity for their retention had therefore escaped the attention of its officers. Negligence can hardly be attributed to the defendant under these circumstances. When it came to the preparation of the case for trial, while the affidavits do not disclose the precise dates upon which the representatives of the defendant were working to secure evidence on its behalf, it does appear that they were for weeks prior to the trial engaged in doing so. Higgins and McDonald were the only ones they could find who knew anything about the safeguarding of the car. They both stated that they did not know the names of any of the working crew who were there at that time and could suggest no way that defendant might ascertain their names. There was no reason why the defendant should not have believed these statements. Counsel for appellant does not suggest any other source of information that was open to the defendant whereby the connection of Conery, Dooley, and Barry with the further safeguarding of the car could have been ascertained, which, it is to be borne in mind, is the newly discovered evidence upon which the motion was based. It was believed by defendant, and naturally so, that the car had been safeguarded only as Higgins had done it and as McDonald saw it. Neither Higgins nor McDonald knew that in addition to what Higgins had done Conery, an inspector of the Santa Fe, had further attempted to safeguard it and defendant did not know it. What the manager of the defendant hoped for in his inquiry of Conery was that Conery might know the names of some of the construction crew working with Higgins. It was only on this subject that he made inquiry of Conery and it was only from his reply, and then for the first time only, that defendant ascertained the fact that Conery himself had taken the measures to safeguard the

car as stated in his affidavit, and these facts were not known
to the defendant until after the trial was closed. The facts
stated tended to show diligence on the part of defendant and
it was for the trial court to determine whether they consti-
tuted a sufficient showing in that respect. It concluded that
they did and there was no abuse of discretion in doing so.

It is further claimed that the newly discovered evidence
was cumulative merely. Even where this is true the court is
not thereby precluded from granting a new trial on that char-
acter of evidence. The question before the trial court, even
where the newly discovered evidence is simply cumulative, is
whether if such evidence had been presented on the trial of
the cause it would probably have produced a different re-
sult. The determination of that question is peculiarly within
the province of the trial court. It is a matter addressed
wholly to its discretion and as a general proposition whether
its ruling is favorable or unfavorable on a motion for a new
trial based on newly discovered evidence which appears to be
merely cumulative, that discretion will not be reviewed except
for manifest abuse. (*Oberlander* v. *Fixen & Co.*, 129 Cal. 692,
[62 Pac. 254]; *People* v. *Buckley*, 143 Cal. 375, [77 Pac. 169];
*People* v. *Selby Smelting & Lead Co.*, 163 Cal. 84, [Ann. Cas.
1913E, 1267, 124 Pac. 692, 1135].) That the newly discov-
ered evidence was material evidence bearing clearly upon one
of the defenses of the defendant,—namely, the safeguarding
of the car, is, of course, not open to question. What the proba-
ble effect of this evidence would have been, if presented to the
jury upon the trial of the cause, was a matter for the trial
court to determine, and in granting such new trial it neces-
sarily concluded that had this evidence been presented to the
jury in the first instance the trial might have had a different
result. It would not have granted it on such ground unless
it so concluded.

In this connection it is claimed by appellant that the com-
pany having been put on the track of discovering this new
evidence the last day of the trial should have moved for a
continuance till it could have been produced; that having
failed to do so, it was precluded from being granted a new
trial on that ground. But the ready answer to this is that
the defendant was not in possession of any information as to
what Conery and the others would testify to upon which to

have based an affidavit for a continuance. All that it then knew was that Conery might be able to tell the names of those who worked with Higgins on the day of the accident, and this, of course, would have been no ground upon which to plead for or obtain a continuance.

We are satisfied on a consideration of the points made by appellant that there is no merit in the claim that the order granting a new trial on the ground of newly discovered evidence was erroneous.

We might rest here in disposing of this appeal from the order in favor of defendant company except for the reason that it strongly insists that we should further sustain the order on the additional points made by it in its motion for a new trial,—namely, that the court erred in refusing to grant its motion for a nonsuit and to instruct the jury to return a verdict in its favor. Its position is that if this further claim is sustained here a new trial will be of no avail as such a decision would terminate this litigation. Both sides have argued this point on the assumption that the court should and would dispose of it, and we now proceed to its consideration.

Under its motion for a nonsuit and directed verdict, defendant presented two questions: 1. The negligence of the defendant, and, 2. The contributory negligence of the plaintiff. It is unnecessary to discuss the first. It is based upon the assumption that it is still an open question whether defendant in leaving the push car unguarded in a public street in a populous part of the city, invited the children of the neighborhood, including plaintiff, to play upon the same upon the principle of the "turn-table cases." But we held in the former appeal in this case (*Cahill* v. *Stone Co.*, 153 Cal. 571, [19 L. R. A. (N. S.) 1094, 96 Pac. 84]), that a push car left under the circumstances set forth in the complaint, and which the evidence in the case tended to sustain, was a dangerous contrivance likely to attract children and within the rule of the "turn-table cases."

It is claimed, however, that even within the rule of the "turn-table cases," defendant was not negligent as to plaintiff because it appears that the car had been put in motion by other children at least half an hour before plaintiff came to play upon it. The theory of the defendant is that the act of the other children in setting it in motion destroyed the

causal connection between the negligence of the defendant in leaving the car unguarded and the injury to plaintiff. But if the defendant was negligent in not safeguarding the car, the mere fact that it was put in motion in play by children before plaintiff joined them will not excuse it, as such a thing ought to have been anticipated by it. The original neglect of the defendant in failing to guard the car continued as the direct and culpable cause of the injury and its responsibility is to be determined by the probable injurious consequences to children which were to be anticipated therefrom and not by subsequent and independent events or agencies that may have arisen. In such a case children are not considered such responsible agents as break the chain of causation. This same claim was made in *Barrett* v. *Southern Pacific Co.*, 91 Cal. 296, [25 Am. St. Rep. 186, 27 Pac. 666], where boys were already playing with a turn-table when plaintiff got on it, and this court said: "Nor is this liability of the defendant affected by the fact that the table was set in motion by the negligent act of other boys."

The principal claim, however, of defendant on these motions is that, assuming the car was a dangerous piece of machinery left unguarded by the defendant, still the evidence conclusively shows that the plaintiff was a boy of sufficient intelligence to know and appreciate the danger of playing about the car and hence, as matter of law, was guilty of negligence in doing so, and the trial court should have so held and granted the motion.

The plaintiff was twelve years of age when the accident occurred. On the evening of the day when it happened he and another boy came along while some children were playing with the car, pushing it up grade on the track and then riding down upon it. He and his companion joined the rest of the children, composed of boys and girls. Several of the boys were older, some younger than plaintiff. In their play when the car was running down grade some of the boys would stop it by jumping off and blocking it with a piece of wood placed on the rail in front of the wheels. When plaintiff considered it his time to block the car he jumped off to do so. This was his first attempt. He ran alongside the car to get the block and put it on the track. The track was a skeleton one, the ties laid in a ditch or trench nearly two feet below

the surface of the street, and plaintiff finding that he could not keep his feet on the ties very well attempted to get back on the car. He had his stomach on it and was trying to hoist himself up when his foot got caught between the wheel and rail, crushing it. He testified that he saw the other boys and girls playing on the car when he and his companion came up and they joined with them in the sport; that all he thought of was playing on the car with them; that he never at any time had any idea that he might get hurt in doing so; never gave that matter any thought; that he would probably have realized that if the wheel passed over his foot it would have hurt it if he had given that matter any thought, but that he never thought of getting his foot caught under it or being injured while playing on the car.

The position of the respondent is that as there is no evidence that the plaintiff was mentally deficient or was possessed of less intelligence than the average boy of twelve years of age he must have known and appreciated that a heavily weighted car, such as the evidence discloses this was, would hurt his foot if it passed over it and that there was danger of this happening if he jumped off the car and ran along the skeleton track to block it; that being a boy of such intelligence he must be deemed to have known and appreciated the danger of playing with the car; chargeable with contributory negligence in having done so, and the duty of the court was, as matter of law, to have so declared, and granted the motion of defendant.

It appears, it is true, that the plaintiff possessed the ordinary intelligence of a boy of his age and it may be conceded that a boy of that age would know that if his foot was caught under the car it would be injured, but this intelligence in such a boy does not necessarily render him guilty of contributory negligence in playing upon it. The question for determination is whether, even though the plaintiff may have known that such a resulting injury would follow, he further realized and appreciated this danger to which he might be exposed in playing upon the car. While it is the general rule in regard to an adult or grown person that to entitle him to recover for an injury resulting from the fault or negligence of another, he must have been free from fault himself, it is **not** the general rule applied to the conduct of children. Min-

ors, as well as adults, are required to exercise ordinary care,
but it is well settled that the ordinary care which a child is
required to exercise must be determined by a different rule
than is applied in the case of adults.   The care which a child
is required to exercise is only that degree of care which chil-
dren of his maturity and capacity under similar circumstances
ordinarily exercise, and this, except in a case where there can
be no doubt under the evidence that the child not only knew
but at the time realized and appreciated the danger of his con-
duct, is to be determined from the circumstances of the par-
ticular case in which his conduct is involved and under the
evidence there presented to the jury.   The rule is clearly de-
clared by this court on the former appeal in this case here-
tofore referred to (*Cahill* v. *Stone Co.*, 153 Cal. 471, [19
L. R. A. (N. S.) 1094, 96 Pac. 84]), as it has often thereto-
fore been declared.   On that appeal, it was said: "There is
no precise age at which, as a matter of law, a child is to be
held accountable for all his actions to the same extent as one
of full age.   (*Consolidated etc. Ry. Co.* v. *Carlson*, 58 Kan.
66, [48 Pac. 637].)   In that case it is said: 'The question as
to the capacity of a particular child at a particular time to
exercise care in avoiding a particular danger, is one of fact,
falling within the province of a jury to determine.'   The
child there referred to was ten years of age.   In *Biggs* v.
*Consolidated etc. Wire Co.*, 60 Kan. 223, [44 L. R. A. 655,
56 Pac. 6], the same rule was applied to a boy of fourteen
years, the court saying: 'We cannot say, as a matter of law,
at what age a boy would be possessed of such intelligence,
foresight and judgment as to charge him with contributory
negligence in a case like the present.' "   Laying down the
same rule are *Barrett* v. *Southern Pacific Co.*, 91 Cal. 296,
[25 Am. St. Rep. 186, 27 Pac. 666] ; *Foley* v. *California
Horseshoe Co.*, 115 Cal. 184, [56 Am. St. Rep. 87, 47 Pac. 42] ;
*Jensen* v. *Will & Finch Co.*, 150 Cal. 398, [89 Pac. 113].   As
said in the Foley case: "These matters, and the further ques-
tion whether the minor duly exercised such judgment as he
possessed, must, therefore, as a rule, be left as considerations
of fact for the jury's determination; and it would be an
exceptional case which would present them as unmixed ques-
tions of law for the determination of the court."   (See, also,

*Pierce* v. *United Gas & Elec. Co.,* 161 Cal. 176, [118 Pac. 700].)

Notwithstanding the insistence of defendant that the evidence here shows that plaintiff fully knew and appreciated the danger he subjected himself to in his conduct with reference to the car, we do not think a situation was presented under the evidence so entirely free from doubt to any fair and impartial mind that the trial court should have taken the question of contributory negligence from the jury and decided as a matter of law that plaintiff was guilty of it. Of course, if the evidence and the natural and logical inferences and deductions from it pointed clearly to contributory negligence on the part of the plaintiff, it would have been the duty of the court to have done so. Immunity from responsibility does not exist in the case of a minor simply from the fact that he is a minor. His conduct by reason of his immature years is only measured by a different standard. His responsibility for negligence on his part is only fixed when it appears that boys of his intelligence and discretion under the same circumstances would have known and appreciated danger. In the present case it cannot be said that this appears beyond question from the evidence. As has been said, it is not a question alone whether a boy of the ordinary intelligence of the plaintiff would have known that if his foot got caught under the wheel of a moving heavily loaded car it would be injured. No doubt but much younger children would realize that this would be the result if any heavy vehicle rolled over it, and would have sufficient prudence not to deliberately test it. But while they might possess this knowledge of resulting injury, it is another question whether under all the circumstances in a particular case they apprehended or appreciated that they were exposing themselves to danger of injury. In this case the defendant left, as the jury found, this push car, a dangerous instrumentality attractive to children, in a thickly populated part of the city and accessible to the children in that neighborhood. Plaintiff passing by saw other children playing on the car, pushing it up the track and riding back on it, the children taking turns and jumping off and blocking it with a stick to check its progress and he joined in their play. Nothing had happened during that play to indicate to plaintiff that there was

any danger. He had seen the other children jump off and block it and do this safely. He testified that in joining the others and engaging in the sport it never entered his mind that he might get hurt; he never gave it a thought, and the fact that he saw others doing this very thing safely, which he unsuccessfully attempted, had a reasonable tendency to support this statement. After this jumping off and blocking had been done by other children playing on it he considered that it was his turn to do it, made the attempt and was injured.

Of course, there was in fact danger in playing about this car in the manner detailed because injury actually happened. But while this danger existed it cannot be said under the evidence, as matter of law, that the plaintiff must be held to have realized and appreciated the risk. It was for the jury, taking into consideration the attractiveness of the push car, the usual thoughtlessness, carelessness, and lack of discretion in children, their childish instincts, impulses, and propensities, together with all the circumstances in this particular case, to say whether the plaintiff was of that age and capacity to realize and appreciate the risk of injury to which he was exposing himself. The court therefore did not err in refusing a nonsuit or in further refusing to instruct the jury to return a verdict for defendant.

The order granting a new trial is affirmed.

Angellotti, J., Shaw, J., and Henshaw, J., concurred.

MELVIN, J., concurring.—I concur in the affirmation of the order granting a new trial and in the part of the opinion holding that the superior court did not err in making said order.

With reference to the court's refusal to grant the motion for nonsuit I express no opinion.