[Civ. No. 1627.   Third Appellate District.—February 6, 1917.]

V. S. McCLATCHY et al., as Members of the State Reclamation Board, Respondents, v. LAGUNA LANDS LIMITED et al., Appellants; LEMOORE CANAL & IRRIGATION COMPANY et al., Defendants.

Public Nuisance—Diversion of Waters Into San Joaquin River—Abatement Under Drainage Act—Venue.—An action brought by the state reclamation board under the act of the legislature in effect August 10, 1913 (Stats. 1913, p. 252), to abate as a public nuisance the diversion of waters into the San Joaquin River, in violation of section 12 of such act, declaring the diversion of the

waters of any stream that will increase the flow of the Sacramento and San Joaquin Rivers to be a public nuisance, which may be abated by such board, must be tried in the county in which the subject of the action or some part thereof is situated, as such an action involves injuries to real property.

Id.—Pleading—Sufficiency of Complaint.—A complaint in an action brought in San Joaquin County to abate as a public nuisance the diversion of the waters of Kings River into the San Joaquin River, contrary to section 12 of the Drainage Act of 1913, need not allege that some specific subdivision or tract of land situated in San Joaquin County was injured, nor that the alleged injury was immediately present, for relief will be awarded when the danger is apparent or the mischief already done.

APPEAL from an order of the Superior Court of San Joaquin County denying a motion for change of place of trial.  J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Short & Sutherland, and H. P. Brown, for Appellants.

C. H. Oatman, George O. Perry, Clary & Loutitt, and Perry & Dailey, for Respondents.

CHIPMAN, P. J.—This is an appeal from an order denying appellants' motion for a change of the place of trial from San Joaquin County to Fresno County.

The action is for the abatement of an alleged public nuisance and for an order restraining the defendants from doing any of the acts mentioned in the complaint, and is brought under the provisions of an act of the legislature in effect August 10, 1913.  (Stats. 1913, p. 252.)  The act provides for the creation of a drainage district to be known as Sacramento and San Joaquin Drainage District, describing its boundaries, the appointing of a reclamation board for the management and control of said district, defining the powers and duties of the reclamation board, and for the prevention of the diversion of the waters of any stream into the Sacramento and San Joaquin Rivers.  Section 12 of the act declares that the board shall have power "to maintain actions to restrain the diversion of the waters of any stream that will increase the flow of water in said Sacramento or San Joaquin Rivers or their tributaries, and such diversion of

the waters of any stream into said rivers or any of their tributaries is hereby declared to be a public nuisance which may be prevented or abated by the reclamation board."

Section 7 of the act of 1913 declares that "The state of California and the people thereof are hereby declared to have a primary and supreme interest in having erected, maintained and protected on the banks of the Sacramento and San Joaquin Rivers and their tributaries and the by-passes and overflow channels mentioned herein, good and sufficient levees and embankments or other works of reclamation, adequately protecting the lands overflowed by said streams, and confining the waters of said rivers . . . within their respective channels," and it is made the duty of the reclamation board to enforce the erection, maintenance, and protection of such levees, etc.

It appears from the verified complaint that Kings River and the San Joaquin River have their source on the westerly slope of the Sierra Nevada Mountains, the San Joaquin River rising near the northeasterly portion of Fresno County, taking a westerly course and generally parallel with Kings River, which latter river is about thirty-five miles distant and south from San Joaquin River; that these rivers reach a designated point somewhere near the boundary line dividing Kings County from Fresno County, where, when unobstructed, the natural flow of Kings River diverges to the south, and has not naturally flowed into or become a part of the San Joaquin, and empties into Tulare Lake, while the San Joaquin River turns northerly, passing through the San Joaquin Valley in the counties of Fresno, Madera, Merced, Stanislaus, San Joaquin and Contra Costa, where it empties into Suisun Bay, an arm of San Francisco Bay. The complaint sets forth with much particularity that the defendants are engaged in efforts to turn the waters of Kings River in a northerly direction in the vicinity where the two rivers take opposite directions naturally, and have been engaged in the construction of artificial works for the purpose of forcing the water out of the natural channel of Kings River in a northerly direction and toward the San Joaquin River; that by these works defendants turned out said Kings River water to a point whence it could readily be turned into the San Joaquin River, and that defendants then constructed what is designated "the new channel," which furnished the means for the water to

force its way to the San Joaquin River; the character of the soil through which this new channel is constructed is described as easily eroded, widened, and deepened by the action of the water, and has been since its construction so widened and deepened as to increase its carrying capacity until it is now capable of carrying from the water-shed and slope of Kings River and into the water-shed and slope of said San Joaquin River nearly all the high waters of said Kings River, and by such processes of erosion and enlarging, if it shall be permitted to continue to carry such waters of Kings River, within one or two years, it will be so enlarged as to divert all of the high and flood waters of Kings River and pass the entire flow thereof into said San Joaquin River; that the natural course of the San Joaquin River as it continues to flow from the point where the waters of said Kings River are so mingled with it is through the central portion of San Joaquin Valley, in a northwest direction, until it mingles with the water of Suisun Bay, and it is through a low-lying country; that the natural floods of the San Joaquin River and its tributaries have, from time to time, flowed out over the banks of the river and over said low-lying lands and inundated, within the natural flood planes of the river, upward of 623,356 acres of such lands; that of these lands three hundred thousand acres have been sufficiently reclaimed by artificial works to be cultivated to crops and occupied for farms and homes, and approximately three hundred thousand acres additional are capable of being reclaimed by the erection of works within the jurisdiction of the plaintiff in this action; that the waters of Kings River which have been diverted therefrom by reason of said dams and other obstructions heretofore described as having been erected and maintained by defendants, "added to the natural high-water plane of said San Joaquin River have so increased, and will, unless said works are abated, continue to increase the water plane of said San Joaquin River at high water, that it has impaired, and, unless said works and diversions are abated, will continue to impair and destroy a great portion of the reclamation work along said San Joaquin River, and has made, and will continue to make, it more difficult and expensive to reclaim the unreclaimed portions of land along said San Joaquin River, as hereinbefore described"; that if said dams, embankments, and channels mentioned in the complaint are not abated, all

of the flood or high waters of said Kings River will be diverted and turned into the San Joaquin River, to the extent of twenty-five thousand cubic second-feet to thirty-five thousand cubic second-feet of water; that with the average velocity of said San Joaquin River between the point where said waters have been and will be commingled and the outlet of said San Joaquin River at four feet per second, and the average width of the San Joaquin River of from five hundred to seven hundred and fifty feet, if the added waters of Kings River are permitted to flow through the San Joaquin River and confined to the width of the natural channel of the river, it will result in raising the water surface of San Joaquin River from eight to fifteen feet in elevation.

The prayer of the complaint is for judgment that "said dams, obstructions, embankments, and channels so erected, constructed, and maintained by said defendants, be decreed to be and constitute a public nuisance, or public nuisances," and that defendants be required to abate the same; "and that said defendants, and each of them, be enjoined and restrained from the doing of any act or thing that may be injurious to any of the works necessary to control the flood waters of said San Joaquin River, or interfere with the successful execution of any plan of said state reclamation board which may be adopted for the control of such flood waters, and that they, and each of them, be forever enjoined and restrained from the diversion of any of the waters of said Kings River that will increase the flow of said San Joaquin River; . . . and for such other and further relief as may be conformable to equity."

At the hearing defendants submitted two affidavits in support of the motion. L. A. Nares deposed that he is familiar with the obstructions mentioned in the complaint, and also with the water measurements of the San Joaquin River, and the various reports of the general government covering a period of years commencing prior to the construction of said obstructions; that the said reports "show that the flood waters of Kings River. . . have not, even during periods of highest known water on said Kings River, increased the water plane of the San Joaquin River at high water on said San Joaquin River"; that said reports show that the natural period of high water on the San Joaquin River at or near the southerly boundary of San Joaquin County, caused by water in said

river from streams other than Kings River, "occurs much earlier in point of time than the natural period of high water at said point caused by water from said Kings River, and that in each season for many years last past, when the crest of the flood waters from the Kings River has reached the southerly boundary of said San Joaquin County, the flood waters reaching said point from streams other than the Kings River have already passed down said San Joaquin River, and the water plane of said San Joaquin River at said point has invariably fallen so far below high-water mark at said point that the flood waters from said Kings River, diverted as set forth in said complaint, have never raised the water plane of the said San Joaquin River to the high-water mark of said river at said point"; that all the said obstructions are situated in Kings County. Affiant appends to his affidavit an excerpt from a report made by the engineer of the reclamation board concerning the unusually high flood of 1914, which, it is contended, corroborates affiant's statement as to the San Joaquin River clearing itself before the flood waters of the Kings River reach the southern boundary of San Joaquin County.

Mr. Teilman deposed that he is familiar with said obstructions, and that they are situated in Kings County near the southerly boundary of Fresno County; "that the waters of the Kings River, which flow north and empty into the San Joaquin River flow in natural channels, known as Fish Slough, sometimes called Fresno Slough; that said natural channels flow in a general westerly and northwesterly direction in said Fresno County and empty into said San Joaquin River in said county; that such water of the Kings River as is diverted, if any, by the dams, obstructions, embankments, excavations, and channels described in the complaint on file herein passes immediately into Fresno County and into the slough above described, and that if any damage is caused by the flood waters of Kings River passing into said slough, it is caused solely and only to real property situated in the said county of Fresno."

While the gravamen of the action may be for the abatement of the obstructions referred to in the complaint, the averments therein are comprehensive enough to involve the question of plaintiffs' right to an injunction to prevent the threatened injury, and the prayer of the complaint seeks injunctive

relief as well as the abatement of the alleged nuisance. The court said, in *People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84, 90, [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135] : "While it is undoubtedly true that, strictly considered, the words 'abate' and 'enjoin' have technically different meanings (*Ruff* v. *Phillips,* 50 Ga. 130, 133) in California, the rule is well established that in proper cases injunctive relief which accomplishes the purposes of abatement without its harsh features is permissible." We do not think the merits of the action can be tried on affidavits. For the purposes of the motion defendants concede "that the allegations of the complaint are true." However, in whatever aspect the action be viewed, it involves injuries to real property, and must be tried in the county in which the subject of the action, or some part thereof, is situated. (Code Civ. Proc., sec. 392; *People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84, [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135].) Where the erection of a dam in one county which when complete would cause damage to real property in another county, because of the diversion of waters, the action should be tried in the latter county (*Drinkhouse* v. *Spring Valley Water Works,* 80 Cal. 309, [22 Pac. 252] ; *Last Chance Water Ditch Co.* v. *Emigrant Ditch Co.,* 129 Cal. 277, [61 Pac. 960] ) ; and the rule applies to threatened injuries. It was held in *City of Marysville* v. *North Bloomfield Gravel M. Co.,* 66 Cal. 343, [5 Pac. 507], that actions to enjoin hydraulic mining in this state could be maintained in any county along the river carrying the mines' tailings, where the damage accrued. The question is discussed in *Las Animas etc. Land Co.* v. *Fatjo,* 9 Cal. App. 318, [99 Pac. 393], and the cases cited.

The purport of Mr. Nares' affidavit is that past observation has shown that the flood crest on Kings River has not reached the San Joaquin River when the flood crest was on the latter river. Whether the alleged dams, channels, and obstructions erected by defendants to turn the flood waters into the San Joaquin River will have the effect alleged in the complaint is one of the vital issues in the case, and neither Mr. Nares nor Mr. Teilman deposed to that question. Neither of these affiants showed that there was any injury to real property in Fresno County. Mr. Teilman's statement was that the waters that are caused to flow north "and empty into San Joaquin River" flow through Fish or Fresno

Slough," and that if any damage is caused by the water "passing into said slough," it is caused solely and only to real property in Fresno County.  Mr. Teilman is silent as to the effect of the water after it has passed through Fresno Slough into the San Joaquin River.

Appellants claim that "there is no allegation in the complaint as to the location of any particular lands which might be injured because of the increased flow of water in the San Joaquin River caused by such diversion.  Although the action was brought in the county of San Joaquin, the complaint is silent as to whether or not any of the lands affected or to be affected by such diversion are situated in San Joaquin County."

It is urged also that there is nothing in the complaint to show that there is at the present time, by reason of the maintenance of said obstruction, any present interference with the rights or enjoyment of property situated in San Joaquin County.

"Within reasonable limits," there is no question, says Mr. Wood, "but that the legislature has the power to declare certain uses of property a nuisance and such use thereupon becomes a nuisance *per se*."  (2 Wood on Nuisances, sec. 763.) The legislature has, within its undoubted power, declared the acts complained of to be a public nuisance, and such acts constitute a nuisance *per se*.  Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance.  No ill effects need be proved.  (2 Wood on Nuisances, sec. 569.)  And all parties to a nuisance *per se*, he who creates it and he who maintains it, are responsible for its effect, without limitations of condition or time.  (*Thornton* v. *Dow*, 60 Wash. 622, [32 L. R. A. (N. S.) 968, 111 Pac. 899, 903].)

Equity will interfere by injunction to prevent threatened injury, where acts which create a public nuisance are about to be committed, causing also an inevitable private and special injury to the complainant (*Walker* v. *Shepardson*, 2 Wis. 384, [60 Am. Dec. 423]) ; and the rule applies equally where the threatened injury is to the public and the people are the complainants.

We do not think it was necessary to allege that some specific subdivision or tract of land situated in San Joaquin County was injured, nor that the alleged injury was immediately

present, for relief will be awarded when the danger is apparent or the mischief already done.

We think the averments of the complaint are sufficient to warrant the inference that the "low-lying lands," referred to as situated along the shores of the San Joaquin River throughout its length where it passes through the counties mentioned, including San Joaquin County, are directly threatened with the injury complained of, and that these lands are within the jurisdiction of the board of reclamation and are made the subject of its care and protection. The scheme of reclamation contemplated by the act is of state-wide concern as well as of great importance to the territory immediately. interested. The effect of the dams, channels, and other means of diversion of the water of Kings River is distinctly pointed out, and it is shown that such diversion will raise the water plane of the San Joaquin River throughout its course in the San Joaquin Valley; that from twenty-five thousand to thirty thousand cubic second-feet of water will be added to the channel of the San Joaquin River, raising its water surface from eight to fifteen feet in elevation; that said obstructions have impaired and will continue to impair and destroy a great portion of the reclamation works along said river, and have made and will continue to make it more difficult and expensive to reclaim portions of land along said river as in the complaint fully described.

Inasmuch as the affidavits submitted with the motion fail to show injury to any lands in Fresno County, and inasmuch as we think it fairly appears that lands situated in San Joaquin County have been injured and are threatened with further injury, we think the motion was rightly denied. If, however, the complaint, or the affidavits, show injury also in Fresno County, the trial may be had in either county where injury has resulted or will result. "Where the real property is situated partly in one county and partly in another, the plaintiff may select either of the counties, and the county so selected is the proper county for the trial of such action." (Code Civ. Proc., sec. 392.)

The order is affirmed.

Burnett, J., and Hart, J., concurred.