[L. A. No. 810.   Department One. — March 19, 1901.]

## MARY GREEN et al., Respondents, v. SOUTHERN PACIFIC COMPANY, Appellant.

ACTION FOR DEATH — RECKLESS DRIVING ACROSS TRACK — CONTRIBUTORY NEGLIGENCE. — Where a railroad company, sued for the death of a person killed while crossing its track, was guilty of no wanton negligence, and the deceased was chargeable with contributory negligence, as matter of law, in driving recklessly across the track, without taking ordinary precautions against meeting the train, and under circumstances indicating, in view of his knowledge of the surroundings, that he was attempting to cross the track before the cars should come along, there can be no recovery for his death.

ID. — NONSUIT. — Where the evidence showed the reckless conduct and contributory negligence of the plaintiff, that the speed of the train was not negligent as matter of law, that the bell rang and the whistle properly sounded before approaching the crossing, and that the company was not wantonly negligent in allowing corn to be planted in its right of way, though it partially obstructed the view of the track, a nonsuit should be granted at the close of the testimony.

ID. — DUTY OF DRIVER APPROACHING RAILROAD CROSSING — OBSTRUCTED VIEW — KNOWLEDGE OF FACTS — PRESUMPTION FROM INJURY. — A driver approaching a railroad crossing, where the view of the track is obstructed, who has familiar knowledge of the location of the track, and of the extent of the obstruction, and of the schedule time of trains, and whose horse and wagon are under control, should, by reason of the obstruction, take the greater pains to listen and look for an approaching train, and where, if taking proper precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions.

APPEAL from a judgment of the Superior Court of Ventura County.   B. T. Williams, Judge.

The facts are stated in the opinion of the court.

R. B. Canfield, and Canfield & Starbuck, for Appellant.

J. L. Murphey, and Murphey & Gottschalk, for Respondents.

HARRISON, J.— On September 2, 1895, George N. Green was struck by a locomotive of the defendant and instantly killed.   His widow and children have brought the present

action to recover damages therefor, alleging that his death was caused by reason of the negligence of the defendant.   The case was tried by a jury, and a verdict given in favor of the plaintiff for the sum of nine thousand dollars.   The defendant has appealed directly from the judgment, presenting the grounds of its appeal in a bill of exceptions.

At the time of his death, Mr. Green was seventy years of age, in good health and in the enjoyment of his faculties.   He had resided in Santa Paula for several years, and on the morning of that day started in an express-wagon, with a team of horses, to go to some land of his, which was about three miles east of Santa Paula, to get a load of wood.   In going there he went for about two miles along the county road, which runs near to the railroad, and at its intersection with the Brock road turned southerly into the Brock road, and was driving along this road when the regular morning passenger train of the defendant, coming from the east, struck and killed him.   The train was running at a speed of about forty miles an hour, and was due at Santa Paula at one minute after eleven o'clock.   It was two minutes before eleven when the accident occurred.   The track of the defendant for a distance of upwards of two thousand feet east of this crossing is straight, and is substantially upon a level with the adjacent ground,—varying less than a foot therefrom for several hundred feet.   Eighty rods east of the crossing is a whistling-post, and from that point to the crossing the grade falls 11 2-10 feet, so that trains of cars are easily moved thereon without the aid of steam.   The intersection of the Brock road with the county road is about three feet higher than at the crossing of the railroad and is 180 feet northerly therefrom.   The general surface of the ground slopes to the south, with about the same grade.   The right of way of the defendant between the crossing and the whistling-post is one hundred feet in width, and, with the consent of the defendant, a portion of this right of way had been planted in corn, which, at the time of the accident, had an average height of about nine feet.   Between the north rail of the track and the south line of the corn there was, however, a space of twelve feet, but to one driving along the Brock road any view of an approaching train would be obstructed by the corn until he had got within twelve feet of the crossing.   There was also an orchard on the east side of the Brock road, just south of its intersection

with the county road, whose trees were about nine feet in height.

It appears, without any substantial conflict in the evidence, that the whistle upon the locomotive was sounded and the bell rung, as required by section 486 of the Civil Code. The engineer testified, as did the fireman, that he gave the regular crossing-whistle — two long and two short blasts — at the whistling-post, and that the bell was ringing continuously. The locomotive had an automatic bell-ringer, and he testified that it was started half a mile back, and was ringing until the train came to a stop at the crossing. Each of the witnesses who was asked thereon testified that he heard the whistle, and although some of them did not hear the bell, their failure to hear it was sufficiently accounted for. It was shown that there was a strong west wind blowing that morning, and with one exception the witnesses were all west of the Brock road, and some distance from the railroad. Mrs. Welchman, who lived between the Brock road and the whistling-post, and about one hundred yards north of the railroad, testified that she heard the whistle and heard the bell ringing as the train was passing her house. Other witnesses heard both the bell and the whistle. Mrs. Trotter testified that she heard the bell after the collision, thus confirming the testimony of the engineer. Mrs. Tinder testified that she heard the bell and then she heard the whistle. In view of this testimony, the fact that two of the passengers on the train did not hear it is not entitled to any consideration. It appears that their attention was not directed to it, and the noise of the train might readily have prevented them from hearing it. Upon the evidence on this point, no sensible or impartial person could fail to find that the bell was rung and the whistle sounded, and, in the absence of any express finding to the contrary, it must be assumed that the jury so considered the evidence. The plaintiff therefore failed to show any negligence on the part of the defendant in giving notice of the approach of the train, and it cannot be held, under any of the circumstances shown herein, that the running of a passenger train through a sparsely settled country, at the rate of forty miles an hour, is, as matter of law, negligence.

The plaintiffs, however, contend that the defendant was guilty of negligence in permitting the view of its track and approaching train to be obstructed by the corn which was

growing there. The claim that such negligence was wanton cannot be sustained. On the other hand, the defendant contends that even if this be conceded to be negligence, it was not the proximate cause of the death of Mr. Green, and that it was shown by the evidence that his own negligence was not only contributory thereto, but was the real cause of his death.

The only eye-witnesses of the accident were the engineer and the fireman upon the locomotive, and Mrs. Trotter. The engineer and the fireman testified that when the train was about thirty or forty feet from the crossing they saw the heads of the horses, which were then about ten or twelve feet from the outermost rail, and "they appeared to be coming pretty fast." Mrs. Trotter was at her home upon the Brock road, about a thousand feet south of the crossing, and testified that her attention was drawn by hearing the whistle, "and when I looked the team was just leaving the main county road, and had turned down towards the track, and was coming pretty fast. All at once he jerked the team around to the right, the northwest side of the fence, and the car just swept by quicker than I could tell it." She further said: "When I first saw the team coming from the main county road down there, why, it was coming pretty fast, and then, in an instant, when the train came through the cattle-guard the team was right upon the track, and he was trying to rein the horses around to the right, apparently." And upon her cross-examination she said: "When I first saw Mr. Green, on this occasion, in his wagon, he had turned from the main county road to come down to the Brock road, and was coming down from the county road this way. His team was coming pretty fast when I saw him, and that was when I stepped out to get a bucket,—coming fast,— but he got near just before the train come, and right at the track, apparently, he jerked his horses around this way, I believe to the right. It was just as he got to the track I saw him pull around the team. His horses ran fast before he got there."

It is the settled rule in this state that contributory negligence is a defense to be affirmatively established by the defendant, unless it is shown or can be inferred from the evidence given in support of the plaintiff's case. (*Robinson* v. *Western Pacific R. R. Co.*, 48 Cal. 426.) It is also well settled that while contributory negligence is a question of fact to be determined by the jury, yet when the facts are undisputed the

CXXXII. Cal.—17

question is one of law for the court (*Glascock* v. *Central Pacific
R. R. Co.*, 73 Cal. 137); and if the evidence thereon is without
conflict, and of such a character that the only conclusion to
be reasonably drawn therefrom is in favor of its existence, the
court may grant a nonsuit at the close of the testimony, or
may direct a verdict for the defendant. (*Davis* v. *California
Street R. R. Co.*, 105 Cal. 131; *Herbert* v. *Southern Pacific Co.*, 121
Cal. 227.) It was said in the case last cited: "The cases aris-
ing from injuries suffered at railroad crossings have been so
numerous, and upon certain points there has been such abso-
lute accord, that what will constitute ordinary care in such a
case has been precisely defined, and if any element is wanting,
the courts will hold, as matter of law, that the plaintiff has
been guilty of negligence. And when injury results which
might have been avoided by the use of proper care, the plain-
tiff cannot recover, although the defendant has also been guilty
of negligence."

Under the evidence which was before the court, it must be
held, in view of the principles thus declared, that the deceased
was guilty of contributory negligence, and that the court
should have granted the defendant's motion, at the close of
the testimony, for a nonsuit. It is very clear that if Mr.
Green, at any time after he had entered upon the Brock road,
had taken the precautions which any prudent man would have
taken, he would have learned that the train was approaching,
and thus have avoided the danger. One of the witnesses was
working, that morning, in a field near the intersection of the
Brock road with the county road, and heard the whistle at the
whistling-post, and saw the top of the train. The place at
which he was working was shown to be five feet higher than
the railroad crossing, and nearly two feet higher than the in-
tersection of the Brock road with the county road. At the
time the whistle sounded, Mrs. Trotter testified that Green had
just turned into the Brock road. He was sitting upon the
seat of his wagon, which, it was shown, brought his eye to a
point seven feet and four inches above the ground, so that he
had practically the same opportunity for seeing the train as
had the witness who was working upon the ground. It was
the regular time for the train to be at that point, and it was
shown that this train had been running upon this schedule for
several months. Green had resided in Santa Paula for sev-
eral years, and his occupation—the transfer business—was

such that it must be assumed that he knew the time at which the train would reach Santa Paula. He had frequently driven over that route, and was familiar with the location of the track and the extent to which its view was obstructed by the corn. His wagon was equipped with a brake, and the horses he was driving were accustomed to the cars. If he had stopped when he reached the turn in the road, he would have heard the whistle, and if he had looked he would have seen the approaching cars. In Herbert's case, *supra*, it was said: " The railroad track of a steam-railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for approaching trains. What he must do in such a case will depend upon circumstances. If the view of the track is obstructed, he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions." The noise caused by the rumble of his empty wagon was an additional reason for caution, and his knowledge that the track was hidden by the corn was a reason for his taking more than ordinary precautions against meeting the train. Instead of taking any precautions, the testimony of all who saw him is that he was driving at a rapid gait towards the crossing. The only inference to be drawn from his conduct, in view of his knowledge of the surroundings, is, that he was attempting to get across the track before the cars should come along. If such be the case, it can only be regarded as recklessness. (*Hager* v. *Southern Pacific Co.*, 98 Cal. 309.)

The judgment is reversed.

Garoutte, J., and Van Dyke, J., concurred.

Hearing in Bank denied.