## Krystopowicz et al. v. Reading Co.

*H. R. Detweiler*, for plaintiffs.

*H. R. Heebner*, for defendant.

SLOANE, J., July 8, 1940.—This suit is the result of injuries to the minor plaintiff, 10 years old. The case was tried without a jury and resulted in verdicts for both plaintiffs.

The boy was injured while trying to jump over a hole, in which he and other boys had built a fire. The hole was on a plot of rough ground owned by defendant. It was approximately a city block in length and about 115 feet

wide, adjoining a large freight yard in the northeastern section of Philadelphia. Along the south side there was a single track of the Pennsylvania Railroad and along the north side a deep gulley, which separated the plot from the tracks of defendant and its freight yard. The entire tract of ground, including the tracks and the freight yard, was elevated about 15 feet above street level and sloped steeply on the south side beyond the Pennsylvania track to the street. The lot was accessible at any point from this cinder incline. There were no fences or warning signs against trespassing.

The section of the city was residential and for at least 10 years the boys of the neighborhood had used the vacant lot daily as a playground.

About ten years before the accident, the boys who then played on this plot of ground had dug a hole approximately in the center of the lot, about three or four feet deep and four or five feet in diameter. The younger boys continued playing in and about this uncovered hole for these years, and during this period fires frequently were built in this hole. Some were started by people of the neighborhood who burned their rubbish in the hole; others were built up by the boys from smoldering ashes.

Railroad policemen patrolled the field from time to time and were known to the boys. According to plaintiffs' witnesses, the officers frequently came upon the lot but did not order or chase the boys away.

On the afternoon of the accident, the minor plaintiff, who had played on the lot for over three years, came upon the scene with a group of boys and played around the hole. They threw tar paper on the embers of smoldering ashes already in the hole. A fire was built up. While the fire was burning, a railroad detective, named Kilroy, known to the boys, came up to the group and spoke with them. The boys testified that he did not chase them and left them playing around the hole and fire.

Then a large group gathered around the hole and were playing, when two or three boys, including the minor

plaintiff, began jumping over the hole. Plaintiff with the other boys succeeded in jumping across once or twice but, on his final try, he slipped and fell into the hole. He received severe burns upon both knees.

Defendant's principal exception to the adjudication is based on the refusal of the trial judge to affirm defendant's only request at the end of the trial that under all the evidence the verdict must be for defendant.

No doubt, as plaintiff argues, the ground, by time and usage, could well be regarded as a playground and therefore defendant owed the duty of ordinary care to the children who used it as such: Rahe et al. v. Fidelity-Philadelphia Trust Co. et al., 318 Pa. 376; Hogan et al. v. Etna Concrete Block Co., 325 Pa. 49; and with that duty there was the connotation "that one who should reasonably foresee the likelihood of injury to another, to whom he is under a duty of care, from conditions for which he is responsible, is liable for failure to take reasonable precautions to prevent such injury": Bonczek et al. v. Philadelphia, 338 Pa. 484, 486.

Under the circumstances of this case defendant knew its lot was a playground, knew of the existence of the hole as a condition of its land and of the practice of people to build fires in the hole and of children to play around it. But as a reasonable person it was not required to guard against the immature recklessness of children: Colligen et al. v. Philadelphia Electric Co., 301 Pa. 87; Dolena et ux. v. Pittsburgh Terminal Coal Co., 324 Pa. 228, 230. Apt expression to this thought is given in the A. L. I. Restatement of Torts §339, comment (c), where in speaking of the attractive nuisance doctrine it is said:

"A possessor of land is . . . under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk in-

volved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado."

We think that the minor plaintiff was injured in this case as a result of his own immature recklessness in the face of a known danger. The boys jumping over the hole, in which a fire was burning, were exhibiting their skill. They must have known that fire was dangerous and that, if they failed in their attempts to span the hole, they would fall into it. In fact, the risk involved was the thing that inspired the sport. It is clear that the children considered their acts as part of a game since many had gathered around to watch the more capable show their skill. The jumping across the hole was an act of bravado.

There are analogous cases in Pennsylvania in which childish acts of exaggeration were held to relieve defendants of responsibility.

In Brown et al. v. Scranton, 313 Pa. 230 (1933), an 11-year-old girl was injured in a public playground when she attempted to climb a wire fence separating two parts of the playground, instead of using a safe path slightly longer but known to her. The court said (p. 231):

"We are of opinion the injury resulted, not from the failure of the municipality to provide a proper barrier, but from the child's act in 'venturing in childish recklessness where no one, child or adult, had any business to be'."

The same language was quoted in Dolena et ux. v. Pittsburgh Terminal Coal Co., supra, where recovery

was denied for the death of a boy who climbed up the sides of a 20-foot tank by means of iron bands surrounding it and was drowned therein.

In Oil City & Petroleum Bridge Co. v. Jackson, 114 Pa. 321 (1886), recovery was denied for the death of a boy who, while crossing a bridge, walked on a gas pipe off the main roadway and on the side of the bridge and fell into the water. The court said (p. 327) :

"It is not necessary to impute negligence to the child; it is sufficient that he was injured, not as the result of the use of the bridge, but as the consequence of his venturing in his childish recklessness, where no one, child or adult, had any business to be." See also Rodgers v. Lees et al., 140 Pa. 475 (1891).

So here, the boy was injured not as a result of the use of defendant's lot as a playground, "but as the consequence of his venturing in his childish recklessness."

We are of opinion also that recovery should be denied because of the greater burden, as compared with the risk involved, which would be placed on defendant, under the circumstances of the present situation, if it were required to prevent injury to children playing around this hole and fire. The attractive nuisance doctrine, on which recovery is based here, is a specialized rule of law. Ordinarily a landowner owes no duty to trespassers, infant or adult, with respect to dangerous conditions existing on the land. However, in order to protect child life in the community, landowners have been held responsible for injuries to children from dangerous contrivances on the land when children were to be anticipated and when the burden of making the place safe was comparatively slight in view of the serious risk involved: A. L. I. Restatement of Torts, §339. There is no doubt that this latter element is an important part of the doctrine: Powell et al. v. Ligon et al., 334 Pa. 250. It has been often pointed out that in the railroad turntable cases, which constituted the early development of the rule, emphasis was placed on the comparative ease with

which the serious danger to children could have been averted: Chicago, Burlington & Quincy R. R. Co. v. Krayenbuhl, 65 Neb. 889 (1902) ; Brown v. Chesapeake & Ohio Ry Co. et al., 135 Ky. 798 (1909).

In the recent case of Powell et al. v. Ligon et al., supra, our Supreme Court said (p. 255) :

"Moreover, to apply the doctrine to such road or street excavations would impose upon contractors a heavier burden than they could reasonably bear. Children must be held responsible for their actions when they conflict with the strong public interest in preserving to the possessor the free use of his land . . ."

The language of the Restatement of Torts, §339, comment (d), is also particularly applicable:

"In determining whether a particular condition maintained by a possessor upon land which he knows to be subject to the trespasses of children involves an unreasonable risk to them, the comparison of the recognizable risk to the children, with the utility to the possessor of maintaining the condition, is of peculiar importance. The public interest in the possessor's free use of his land for his own purposes is of great importance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which would be obviated without any serious interference with the possessor's legitimate use of his land."

In the present case, the dangerous conditions were in no way created by defendant and the risk to the children was not unusually serious. Furthermore, there was little difference between this excavation and any natural hole in the land. A hole of this size and depth is not uncommon on vacant lots and by itself would not cause serious bodily harm. The addition of the fire, although increasing somewhat the degree of the risk, was not a fact from which defendant should have anticipated grave and permanent bodily harm to trespassing children. Yet we are asked to impose on defendant the burden of re-

moving from its land dangerous conditions which others have created thereon and which involve risks that children ordinarily encounter on any abandoned piece of property on which they might play. We do not think that the playground rule was intended to go that far.

The same reasoning moved courts in other jurisdictions to deny recovery in the following cases: Peters v. Bowman, 115 Cal. 345; McCall v. McCallie et al., 48 Ga. App. 99 (1933); Williams et al. v. Kansas City, Clay County & St. Joseph Ry Co., 222 Mo. App. 865 (1928); Zagar, etc., v. The Union Pacific R. R. Co., 113 Kan. 240 (1923); Stendal v. Boyd, 73 Minn. 53 (1898); and City of Omaha v. Bowman, Admx., 52 Neb. 293 (1897).

Our own Supreme Court ". . . has maintained a strict insistence on keeping the application of the attractive nuisance doctrine within narrow bounds. . . .

"The tendency of those courts which recognize the attractive nuisance doctrine is to confine, rather than enlarge, its scope": Powell et al. v. Ligon et al., supra, pp. 253, 254.

The defect here with plaintiffs, if the recovery is allowed to stand, is that defendant will be topped with the burden of more than ordinary care; that more will be expected of defendant than is expected of a reasonable person and perhaps to the extent of guaranteeing compensation for injuries to those (particularly children) who use its ground for play. At least, if we allow the verdict to stand, we will require an owner or occupier of land to take extraordinary and oppressive precautions: DiMarco et al. v. Pennsylvania R. R. Co., 321 Pa. 568, 573. We are not permitted under our decisions to go that far in placing responsibility, no matter how sympathetic we are toward children and their hurts.

We sustain defendant's seventh exception to the adjudication and enter judgment for defendant notwithstanding the verdict.