[L. A. No. 24383. In Bank. Feb. 2, 1959.]

DONNA JEAN COURTELL, a Minor, etc., Respondent, v. HAZEL M. McEACHEN et al., Appellants.

Murchison & Cumming, R. Bruce Murchison and Warren D. Allen for Appellants.

Frank W. Swann, Jr., for Respondent.

GIBSON, C. J.—Defendants, Mrs. McEachen and the administrator of the estate of her deceased husband, appeal from a judgment in the amount of $50,000 recovered by plaintiff as damages for severe burns she sustained while playing on a lot owned by the McEachens in joint tenancy.

A house had been torn down on the lot where the accident happened, and early in 1953 Mr. McEachen, who managed the real property of the couple, engaged Harry Plummer to burn the lumber and debris, which covered the lot. Plummer, an evening-shift worker in a tire factory, was a tenant of the McEachens, renting a house next to the lot, and he agreed to do the burning for one month's free rent. McEachen told him that he could burn a little each day between 9:00 a. m. and 10:30 or 11:00 a. m., and for several mornings after February 1st he burned some debris at approximately the center of the lot. On February 11, the day of the accident, Plummer did some burning in this manner and left the lot about 11:00 a. m., returning to his home.

About 2:30 p. m. on February 11, plaintiff, a girl 5 years and 9 months old, was walking home from school. Several children, among them two daughters and a son of Plummer, were playing on the lot, and one of them called to plaintiff to join them. A woman who saw the accident from her home nearby testified that plaintiff walked to the center of the lot, jumped over something and "stooped down" and that, when plaintiff got up, the back of her dress was on fire. The witness had observed the lot from the time that Plummer started the fire in the morning, and she stated that, when the accident happened, the fire was still smoldering, although there were no flames.

The court determined that plaintiff was capable of being a witness, and she testified that her dress caught fire when, having gone to the center of the lot and having jumped over a pile of wood, she squatted down to pick up a stick. She further said that there were no flames on the lot, that there was a little smoke in the center and embers on the ground, including a 6-inch pile under some wood, that she did not know embers could burn her or set her dress on fire, and that she knew of fire only from her mother's stove.

According to one of Plummer's daughters, her brother had started a fire near the front of the lot, and, when plaintiff came onto the lot, the children were playing with that fire, which was about 15 inches high. Both plaintiff and the wit-

ness jumped over the fire "a little bit over the side." Plummer's son testified that shortly before the accident the children were playing with a fire he had lighted. Neither of the two Plummer children saw when or how plaintiff's dress caught fire.

Plummer testified that, before leaving the lot on the morning of February 11, he put out the fire by wetting it with a hose, raking it apart and pouring buckets of water over it, and that, when he came out of his house after the accident, he saw a fire of newspapers or cardboard at approximately the place where he had been burning earlier but did not see any "red coals."

At the trial Mrs. McEachen denied knowing that children were playing on the lot prior to the accident, but it was shown that she had made a statement to the contrary in her deposition. According to Plummer, he knew that his children and others played on the lot after the house had been torn down, and Mr. McEachen had visited him on some occasions when the children were playing there.

Defendants first complain of an instruction given by the court on its own motion that there was no contributory negligence on the part of plaintiff. There are four theories which could warrant the giving of such an instruction: (1) that a child of the age of plaintiff is conclusively presumed to be incapable of contributory negligence; (2) that the evidence established that this particular plaintiff was incapable of such negligence with respect to the accident in question; (3) that it was proved, as a matter of law, that plaintiff, while capable of negligence, had exercised due care; or (4) that, although plaintiff had been negligent, her lack of care could not have contributed to her injury. None of these theories, however, can justify the giving of the instruction in this case.

The questions whether a child was capable of exercising care to avoid the particular danger encountered and whether, if so, the child failed to exercise due care, thereby contributing to the injury, are normally for the trier of fact to determine. (*Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126, 139 [138 P. 712].) In keeping with this rule courts have rejected the theory that a child of plaintiff's age, namely, between five and six, is incapable of contributory negligence as a matter of law. (*Smith* v. *Harger,* 84 Cal.App. 2d 361, 370 [191 P.2d 25] ; *Carrillo* v. *Helms Bakeries, Ltd.,* 6 Cal.App.2d 299, 304 [44 P.2d 604].) **[4]** The evidence was conflicting as to whether plaintiff's dress caught fire

because she played near flames or because she squatted down on embers, and a determination of this conflict was obviously essential in order to resolve the questions of plaintiff's capacity to exercise care for her safety and of her contributory negligence. Accordingly, those questions could not properly have been decided as matters of law.

Plaintiff appears to take the position that, in cases involving injury to young children, the trial judge may determine the issue of contributory negligence even though questions of fact are presented. She relies on a statement in *Mayne* v. *San Diego Elec. Ry. Co.*, 179 Cal. 173, 177 [175 P. 690], that ''as a rule courts upon appeal have not interfered with the discretion of trial courts in referring or in refusing to refer to juries the question as to whether the contributory negligence of children of the age of 14 years or under was such as to prevent their recovery . . . .'' In that case, however, the trial judge had not decided the issue of contributory negligence but had submitted it to the jury. Thus, the case on its facts does not support plaintiff's position, and the quoted language should not be construed in the manner urged.

■ Contributory negligence is a matter bearing directly upon the outcome of a suit, and, where, as in the present case, the facts are in dispute, there is no rational basis for permitting the judge, rather than the jury, to resolve that matter. So far as has been called to our attention, the existence of such an exceptional power is not recognized anywhere.

■ The instruction that there was no contributory negligence on the part of plaintiff erroneously deprived defendants of a defense upon which they relied. ■ Although plaintiff has not raised the point, it has been suggested that the error is not prejudicial because, assertedly, the defense was so defectively pleaded that it must be treated as not properly in the case. However, there is nothing in the record to show, and plaintiff does not now claim, that the defect in the pleadings misled or hindered her in any way. Having sought unsuccessfully to strike the defense from the answer, plaintiff was aware that the matter was being treated as subject to trial, and she introduced evidence which, while it may also have been material to her case in chief, undoubtedly tended to rebut the claim of contributory negligence, for example, her testimony that there were no flames on the lot, that she did not know embers could burn her or set her dress on fire, and that she knew of fire only from her mother's stove. On appeal she has not seen fit to mention the defect and argues only that the

instruction given by the court was proper under the evidence. In these circumstances we are not justified in disregarding the effect of the erroneous instruction, and, since the error was clearly prejudicial to defendants, the judgment must be reversed.

There are several other problems which should be discussed in order to guide the trial court in the event of a new trial. One of these concerns the effect, if any, upon defendants' liability of the circumstance that Plummer, rather than defendants, actually did the burning. ■ The determination of whether Plummer was an independent contractor or an employee depends upon a consideration of various factors, the most important of which is the degree of control retained by the McEachens. (See *Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33, 43-44 [168 P.2d 686].) The evidence now before us is inconclusive in regard to this factor since it appears that McEachen gave only a few instructions and did not supervise the burning but that Plummer would have followed additional instructions had they been given. Other pertinent circumstances are also conflicting in their effect, for example, Plummer was paid by the job, rather than by the hour, but burning was not his usual occupation. On such a record, the question as to whether Plummer was an employee or an independent contractor is one of fact.

■ Obviously, if Plummer was an employee, defendants would be liable for any conduct on his part which, in view of his knowledge regarding use of the lot by children, would constitute a lack of due care. We do not mean to suggest, however, that there could be no liability if it should be found that Plummer was in independent contractor. ■ The rule that an employer is not liable for an independent contractor's negligence is subject to numerous exceptions, including the ones set forth in sections 413 and 416 of the Restatement of Torts.* (*Potter* v. *Empress Theatre Co.*, 91 Cal.App.2d 4,

---

*Section 413 of the Restatement of Torts provides:

''One who employs an independent contractor to do work which the employer should recognize as necessarily creating during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.''

Section 416 of the Restatement of Torts provides:

''One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during

10-11 [204 P.2d 120] ; see *Snyder* v. *Southern Cal. Edison Co.,* 44 Cal.2d 793, 797 [285 P.2d 912] ; *Knell* v. *Morris,* 39 Cal.2d 450, 456 [247 P.2d 352].) Those sections relate to a situation where an independent contractor is employed to do work which the employer should recognize as necessarily creating a condition involving an unreasonable risk of bodily harm to others unless special precautions are taken. They impose liability upon the employer for an injury caused by the absence of such precautions if he has failed to take steps to assure observance of the precautions, either by a provision in the contract or in some other reasonable manner (§ 413), or if the independent contractor has not exercised reasonable care to take such precautions (§ 416). It is to be noted that the sections require knowledge of the employer himself concerning the existence of a risk to others, so that a showing of such knowledge must be made regardless of what the independent contractor may have known.

Another question is whether plaintiff, who undoubtedly has a cause of action if she was injured by active operations and was a licensee (see *Oettinger* v. *Stewart,* 24 Cal.2d 133, 136 [148 P.2d 19, 156 A.L.R. 1221] ; Rest., Torts, § 341), has no cause of action if she was injured by a condition of the premises and was a trespasser. A child trespasser injured by a condition of the premises may recover if the case comes within the rule set forth in section 339 of the Restatement of Torts, and, of course, a child licensee thus injured has at least an equal right of recovery (see Prosser on Torts (2d ed. 1955) pp. 450, 438-440; Rest., Torts, § 342 and comment (b) thereto). Section 339 reads: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made danger-

its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions."

ous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.''

■ The duty of the possessor of land under section 339 extends to dangerous conditions ''which, though observable by adults, are likely not to be observed by children or which contain risks the full extent of which an adult would realize but which are beyond the imperfect realization of children.'' However, it does not extend to ''those conditions the existence of which is obvious even to children and the risk of which is fully realized by them.'' (Rest., Torts, § 339, comment (b).)

■ On the basis of the record now before us, different inferences could be drawn as to the character of the danger encountered by plaintiff, and it would be for the trier of fact to determine whether she was injured by a risk not obvious to her. The question whether the concealed danger, if it existed, should have been recognized as creating an unreasonable risk of serious harm to young children, would also be one of fact unless an affirmative answer is compelled in view of two county fire ordinances which, according to plaintiff, establish defendants' negligence as a matter of law.

Section 1313 of Ordinance No. 2947 provides: ''It shall be unlawful to leave, or cause or permit to be left, any outdoor or open fire unattended by an adult person, or such person or persons as may be required in permit issued for any such fire by the County Fire Warden. Before leaving any such fire, such person or persons in charge of such fire shall thoroughly extinguish same by completely covering it with dirt, saturating it with water, or otherwise treating it in such a manner to prevent rekindling of such fire.''

Section 1301 of Ordinance No. 5520, which also relates to open fires, provides that a person shall not burn, or cause or permit to be burned, any combustible material unless (a) he first secures a permit to do so, or (b) the burning is done in small heaps between 6:00 a. m. and 10:00 a. m. at specified distances from woodland, buildings, or other combustible material, and is attended at all times by an adult having extinguishing equipment, or (c) the burning takes place within the boundaries of an established camp site.*

---

*Section 1301 of Ordinance No. 5520 provides:

''Open Fires—hours of burning. A person shall not build, light, maintain, or cause or permit to be built, lighted or maintained, any open or outdoor fire, use, or cause or permit to be used, any fire for clearing land,

Unless the evidence on a new trial should materially differ from that now before us, a factual issue would be presented as to whether Plummer violated section 1313, but a violation of section 1301 would be shown as a matter of law, since none of the three exceptions to the general prohibition against open fires would be applicable.

It is settled that, where a statute is intended to protect the class of persons in which the plaintiff is included against the risk of the type of harm he has sustained, a violation of the statute gives rise to a presumption of negligence which may be rebutted by evidence of justification or excuse. (*Porter* v. *Montgomery Ward & Co., Inc.*, 48 Cal.2d 846, 849 [313 P.2d 854] ; *Satterlee* v. *Orange Glenn Sch. Dist.*, 29 Cal. 2d 581, 588 [177 P.2d 279].) While there is no claim of justification or excuse, defendants take the position that the ordinances were designed to protect against the spreading of fire and not against bodily injury suffered by one coming voluntarily into the area of danger, particularly if the one injured is a trespasser. It may be noted, however, that the portion of Ordinance No. 5520 relating to issuance of permits for open fires makes clear that the fire warden is to consider the prevention of the spreading of fire ''or'' the protection of public safety.

In our view, the reasonable construction to be given the ordinances is that they are intended to protect not only against the spreading of fire but against all perils which may arise from fires not properly started, controlled or extinguished, whether or not the danger materializes on the premises where the burning is done. The protection undoubtedly

---

burn or cause or permit to be burned, any brush, trash, rubbish, stubble, or other flammable or combustible material, unless:

"(a) He first secures from the County Fire Warden, State Forester, or a United States Forest Service officer having jurisdiction, a permit so to do, or

"(b) Such burning is in one or more small heaps or piles, where the fire is set in dooryard premises, corrals, gardens, or plowed fields, at a distance not less than five hundred (500) feet from any woodland, timber, or brush-covered land, or land containing dry grass or other flammable vegetation, and there is at least one adult person in actual attendance with water, garden hose, shovels or other fire extinguishing equipment on hand in charge of such fire at all times during its burning, and such burning is done not less than twenty-five (25) feet from buildings, structures, or other combustible material, and further that such burning is done only between the hours of 6:00 a. m. and 10:00 a. m. of the same day, or

"(c) Such burning is within the boundaries of any established camp site, as defined in Section 1316.''

extends to licensees on those premises, and there is no reason to conclude that it does not also extend to child trespassers to whom a duty of care is owed under the rule set forth in section 339 of the Restatement of Torts. ▮▮▮ The person who is responsible for the burning is charged by the ordinances with knowledge that unreasonable risks of harm are presented by the contingencies sought to be prevented, including the dangers to trespassing children resulting from conditions not obvious to them. A violation of the ordinances would, absent a showing of justification or excuse, give rise to a presumption of negligence if the jury were to find against defendants on the questions regarding existence of a concealed risk and knowledge of use of the lot by children.

▮▮▮ A presumption of negligence arising from burning by Plummer in violation of the ordinances could not form a basis of liability, of course, unless the violation proximately caused plaintiff's injuries. There would be a question in this connection as to whether the accident resulted from the fire started by Plummer or a second fire assertedly lighted by his son.

The judgment is reversed.

Shenk, J., and Traynor, J., concurred.

SPENCE, J., Concurring and Dissenting.—I concur in the reversal of the judgment upon the principal ground stated for reversal in the main opinion. It is there correctly declared that ''The instruction that there was no contributory negligence erroneously deprived defendants of a defense upon which they had relied. . . . In these circumstances, we are not justified in disregarding the effect of the erroneous instruction, and, since the error was clearly prejudicial to defendants, the judgment must be reversed.'' I must dissent, however, from the views expressed in the main opinion upon the more fundamental questions involved on this appeal. Furthermore, I am of the opinion that the reversal should be accompanied with directions to the trial court to enter judgment in favor of defendants.

This is one of a series of recent appeals involving the question of the nature of the duty owed by the landowner to the trespassing child. My views on this question were set forth at some length in my dissenting opinion in *Reynolds* v. *Willson, ante,* pp. 94, 106 [331 P.2d 48], and need not be repeated here. But regardless of the conflicting views expressed in the Reynolds case, it seems entirely clear that

the present case involves only the common, obvious risk of fire for which liability for injuries to the trespassing child should not be imposed upon the landowner or those acting on his behalf.

Turning first to the facts presented by the record, it is true that conflicting inferences could be drawn as to whether the minor plaintiff was injured through contact with the flames of the fire built by other children or through contact with the embers of a fire previously built in the middle of the vacant lot by Plummer. It may also be conceded that conflicting inferences could be drawn as to whether Plummer was an employee or an independent contractor. But even if all conflicting inferences are resolved in favor of plaintiff, the imposition of liability here appears to be wholly inconsistent with our prior decisions, which strictly limit the type of cases in which liability may be imposed upon the landowner for injuries to the trespassing child.

Accepting plaintiff's testimony, it showed that while she did not see any "flames," she saw "live embers" and "smoke" arising therefrom. Her explanation of her rash act in squatting down there was that she had never seen "live embers" before. The fact remains, however, that any risk which she encountered was a common, obvious risk of fire. To intimate, as does the main opinion, that the risk described by plaintiff could be found by the trier of fact to be a "concealed" risk, or a "hidden" or "masked" risk as required by the authorities, is to indulge in a contradiction of terms. No risk can be more common or more obvious than the risk presented by the ordinary trash fire built upon the surface of the ground. Such was the only risk presented here under any view of the evidence.

It is significant to note that the main opinion does not cite a single case which has imposed liability upon the landowner to the trespassing child under similar circumstances. On the other hand, the great weight of authority supports the view that no liability should be imposed here. (*Moon* v. *Payne,* 97 Cal.App.2d 717 [218 P.2d 550]; *Dunbar* v. *Olivieri,* 97 Colo. 381 [50 P.2d 64]; *Paolino* v. *McKendall,* 24 R.I. 432 [53 A. 268, 96 Am.St.Rep. 736, 60 L.R.A. 133]; *Fitzmaurice* v. *Connecticut R. & L. Co.,* 78 Conn. 406 [62 A. 620, 112 Am. St.Rep. 159, 3 L.R.A. N.S. 149]; *American Advertising & Bill Posting Co.* v. *Flannigan,* 100 Ill.App. 452; *Erickson* v. *Great Northern Ry. Co.,* 82 Minn. 60 [84 N.W. 462, 83 Am. St.Rep. 410, 51 L.R.A. 645]; *Coleman* v. *Robert Graves Co.,* 39

462

Misc. 85 [78 N.Y.S. 893], aff. 89 N.Y.S. 1040; *Carlow* v. *John A. Manning Paper Co.*, 221 App.Div. 415 [223 N.Y.S. 358]; *Zaia* v. *Lalex Realty Corp.*, 261 App.Div. 843 [25 N.Y.S.2d 183], aff. 287 N.Y. 689 [39 N.E.2d 300]; *Stinnett* v. *Liberty Aircraft Products Corp.*, 273 App.Div. 909 [77 N.Y.S.2d 357]; *Eason* v. *State of New York*, 104 N.Y.S.2d 683; *Krystopowicz* v. *Reading Co.*, 40 Pa. D. & C. 304; *City of Harlan* v. *Peaveley*, 224 Ky. 338 [6 S.W.2d 270]; *Lentz* v. *Schuerman Bldg. & Realty Co.* [Mo.], 220 S.W.2d 58; see cases collected 36 A.L.R. 34, 192; 27 A.L.R.2d 1187, 1191.)

Some of the cited fire cases, as well as other cases, have involved violations of ordinances but such violations were not deemed material as the ordinances, like the ordinances here, were obviously not enacted for the protection of trespassing children. As was said in *Lopez* v. *Capitol Co.*, 141 Cal.App. 2d 60, at page 69 [296 P.2d 63] : "The ordinance added nothing to respondents' duty insofar as the duty to trespassers is concerned."

The main opinion does not discuss the above-cited cases or any of the prior decisions of the courts of this state dealing with the fundamental question involved. It merely quotes section 339 of the Restatement of Torts and, like the dissenting opinion in *Knight* v. *Kaiser Co.*, 48 Cal.2d 778, 785 [312 P.2d 1089], equates its requirements with mere "lack of due care." Thus the main opinion places upon the landowner a duty toward the trespassing child which is measured by precisely the same standard as the duty owed by the landowner to a child who is a business invitee. The imposition of such duty is contrary to numerous prior decisions in this state. (*Knight* v. *Kaiser Co.*, supra, 48 Cal.2d 778; *Melendez* v. *City of Los Angeles*, 8 Cal.2d 741 [68 P.2d 971]; *Peters* v. *Bowman*, 115 Cal. 345 [47 P. 113, 598, 56 Am.St.Rep. 106]; *Wilford* v. *Little*, 144 Cal.App.2d 477 [301 P.2d 282]; *Lopez* v. *Capitol Co.*, supra, 141 Cal.App.2d 60; *Lake* v. *Ferrer*, 139 Cal.App.2d 114 [293 P.2d 104]; *Ward* v. *Oakley Co.*, 125 Cal. App.2d 840 [271 P.2d 536]; *Betts* v. *City & County of San Francisco*, 108 Cal.App.2d 701 [239 P.2d 456]; *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708 [178 P.2d 472]; *King* v. *Simons Brick Co.*, 52 Cal.App.2d 586 [126 P.2d 627]; *Beeson* v. *City of Los Angeles*, 115 Cal.App. 122 [300 P. 993]; *Reardon* v. *Spring Valley Water Co.*, 68 Cal.App. 13 [228 P. 406]; *Polk* v. *Laurel Hill Cemetery Asso.*, 37 Cal.App. 624 [174 P. 414].)

The reading of these authorities demonstrates the impro-

priety of discussing the duty of the landowner toward the trespassing child in the conventional terms of "lack of due care" or "negligence" unless it appears that the landowner's premises presented some uncommon or concealed danger which brings the situation within the recognized exception to the general rules limiting his liability. Then, and then only, does the law impose upon him the added burden of using "due care" to safeguard trespassing children from such uncommon or concealed danger. No such situation is shown by the record here.

There is a further suggestion in the main opinion that plaintiff might have a cause of action upon the theory that she was injured through "active operations" of defendants. Reference is made to *Oettinger* v. *Stewart*, 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221]. While the so-called "active negligence" doctrine may be applied where a defendant who was on the premises was chargeable with some new act of negligence after the injured person had entered thereon (*Yamauchi* v. *O'Neill*, 38 Cal.App.2d 703 [102 P.2d 365]), no authorities have been found which hold that the circumstances of the present case would fall within its scope. Any risk of harm here resulted solely from the leaving of the premises in the condition described, and such leaving constituted, at most, mere "passive negligence" as distinguished from "active negligence" within the meaning of the doctrine. There is therefore no question of fact to be determined which could make the "active negligence" doctrine applicable here.

In my dissenting opinion in *Reynolds* v. *Willson, supra, ante,* pp. 94, 106 [331 P.2d 48] I referred to the confusion that would inevitably result from the majority opinion there. Such confusion will become worse confounded by the filing of the main opinion here. Both opinions are clearly susceptible to the construction that this court is now, *sub silentio,* "disapproving the former cases" as was advocated in the dissenting opinion in *Knight* v. *Kaiser Co., supra,* 48 Cal.2d 778, 785. Both opinions are likewise clearly susceptible to the construction that this court now, in effect, is approving the erroneous construction placed upon section 339 of the Restatement of Torts in *Copfer* v. *Golden,* 135 Cal.App.2d 623 [288 P.2d 90]. Nevertheless, no mention whatever is made of "the former cases" or of the Copfer case in the main opinion here. Unfortunately, the bench and bar will still be compelled to speculate upon this court's views concerning the proper construction of section 339 of the Restatement of

Torts and upon this court's views as to whether "the former cases" are to be followed or ignored.

As indicated in my dissent in *Reynolds* v. *Willson, supra, ante,* pp. 94, 106 [331 P.2d 48], I believe that section 339 of the Restatement of Torts, properly construed, is entirely consistent with "the former cases." (See *Knight* v. *Kaiser Co., supra,* 48 Cal.2d 778; *Melendez* v. *City of Los Angeles, supra,* 8 Cal.2d 741; *Wilford* v. *Little, supra,* 144 Cal.App.2d 477.) On the other hand, I do not believe that the majority opinion in the Reynolds case or the main opinion here can be reconciled with those decisions. I am in accord with Dean Prosser's version of the proper construction of section 339, where he states: "There are some dangers common in the community which any child of sufficient age to be allowed at large may be expected to understand and appreciate—such as the usual risks of fire and water, . . ." (Prosser on Torts, 2d ed., p. 441.) There is no evidence in the record before us which shows anything more than the "usual" risk of fire. Furthermore, it is not suggested that anything more could be shown on a retrial of the cause.

I would therefore reverse the judgment and would accompany such reversal with directions to the trial court to enter judgment in favor of the defendants.

Schauer, J., and McComb, J., concurred.

CARTER, J., Concurring and Dissenting.—I agree with that portion of the majority opinion which determines the issue of liability of the defendants in this case but disagree with the discussion and the conclusion with respect to the issue of contributory negligence of the plaintiff, Donna Jean Courtell.

From my examination of the record in this case it appears clear that contributory negligence is not an issue for the following reasons: First, there is no sufficient allegation in the answer of any of the defendants to raise an issue of contributory negligence of any of the plaintiffs. Second, there is no basis for the conclusion that the issue of contributory negligence is available to defendants because no testimony was offered on this issue and the case was not tried upon the theory that contributory negligence was an issue. The record discloses that all of the testimony offered on behalf of plaintiff was testimony relating to her conduct, which was necessarily a part of her case in chief.

It is true that in the second affirmative defense of the answer of defendants there is an attempt to plead contributory negligence generally. A demurrer and motion to strike this defense were interposed. The demurrer was overruled and the motion to strike denied. Under the settled law of this state plaintiffs' attack upon this defense should have been sustained. From this state of the record it cannot be said that contributory negligence was pleaded or that the pleadings were sufficient to give rise to the issue of contributory negligence. No testimony was offered by either party on the issue of contributory negligence and the fact that instructions were submitted on this issue is of no consequence.

While it is my view that it is within the province of the trial judge to determine in the first instance whether a child of tender years may be guilty of contributory negligence, for the reasons above stated, it is not necessary for this court to determine in this case whether the trial judge abused his discretion in holding as a matter of law that plaintiff Donna Jean Courtell was not capable of exercising care to avoid the particular danger encountered by her which resulted in her injury and that she could not, therefore, be guilty of contributory negligence.

In California, as a general rule, a defendant must specially plead contributory negligence of the plaintiff in order to rely on that defense. (*Kenny* v. *Kennedy,* 9 Cal.App. 350, 351 [99 P. 384] ; *Kofoid* v. *Beckner,* 70 Cal.App. 624, 630 [234 P. 113] ; *Hoffman* v. *Southern Pac. Co.,* 84 Cal.App. 337, 346 [258 P. 397].) But where plaintiff's contributory negligence appears from the allegations of the complaint or evidence introduced in his behalf, the defense is available to the defendant though not pleaded in his answer. (*Green* v. *Southern Pac. Co.,* 132 Cal. 254 [64 P. 255] ; *Hall* v. *City & County of San Francisco,* 188 Cal. 641 [206 P. 459] ; *Kenny* v. *Kennedy, supra,* 9 Cal.App. 350.) Another exception to the general rule exists where it appears from the record that the issue of contributory negligence was actually and intentionally tried by the introduction of pertinent evidence, provided it is shown that the parties consciously participated or acquiesced in such trial as if the issue had been made by the pleadings. (*Ortega* v. *Cordero,* 88 Cal. 221, 227 [26 P. 80] ; *Lein* v. *Parkin,* 49 Cal.2d 397, 400-401 [318 P.2d 1].)

The plea must set forth the facts on which the defense of contributory negligence is predicated and not merely state

the conclusion of the pleader that the plaintiff was guilty of negligence contributing to the injury. (*Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500, 505 [143 P. 714].) "It is not necessary to use the specific term of contributory negligence, *although a concise statement of the facts indicating the commission or omission of acts which would be required of one under similar circumstances in the exercise of ordinary care and which would appear to directly contribute to the injuries complained of must be alleged. It is not sufficient to merely allege in the form of a conclusion that the acts complained of were due to the negligence or carelessness of the plaintiff.*" (*Hoffman* v. *Southern Pac. Co.*, 84 Cal.App. 337, 347 [258 P. 397].)

Where an improper pleading is shown to exist it is at the very least subject to a special demurrer (see *Campbell* v. *Genshlea*, 180 Cal. 231, 217 [180 P. 336]; *Fleischmann* v. *Loitito*, 6 Cal.2d 365, 367 [57 P.2d 922]), and some cases have held that a general demurrer should be sustained (*Foerst* v. *Hobro*, 125 Cal.App. 476, 479 [13 P.2d 1055]; *Callaway* v. *Novotny*, 128 Cal.App. 166, 169 [16 P.2d 1013]).

Applying these rules to the case at bar, the question for determination is whether defendant's allegations in his second special defense constitute an adequate plea of contributory negligence. If not then the demurrer to this defense should have been sustained or the motion to strike the same should have been granted. For the reasons stated below it appears that the allegations contained in this pleading are insufficient to state a valid plea of contributory negligence.

The plea reads in part "That if in fact plaintiffs . . . were injured . . . then said injuries and damages, if any . . . are due to the negligence and carelessness of the plaintiffs . . . and that said negligence and carelessness . . . proximately and concurrently contributed to and brought about whatever injuries and damages plaintiffs . . . may have sustained."

It is at once evident in reading this pleading that there are no facts included therein that indicate the commission or omission of acts which would be required of one under similar circumstances in the exercise of ordinary care and which would appear to directly contribute to the injuries complained of. Failure to allege any fact or facts from which the negligence occurred renders the complaint fatal (*Church* v. *Headrick & Brown*, 101 Cal.App.2d 396 [225 P.2d 558]; *Potter* v. *Richards*, 132 Cal.App.2d 380 [282 P.2d 113]) for the reason that there is a failure to show a causal connection between

the act and injury. Furthermore there is no evidence which would support a finding of contributory negligence.

Although these complaints are concerned with negligent acts of the defendant the same rules apply when defendant pleads contributory negligence. (*Hoffman* v. *Southern Pac. Co., supra.*) Thus, defendant's failure to describe any acts of negligence on the part of the plaintiff to show a causal connection between them and the injury is fatal.

I would, therefore, affirm the judgment.

Respondent's petition for a rehearing was denied March 4, 1959. Carter, J., was of the opinion that the petition should be granted.